UTICA,
July, 1833.

Walker
v.
Schuyler.

---

## WALKER vs. SCHUYLER.

The *dower* which a widow is entitled to, in lands aliened by the husband during the marriage, is *one third of the value at the time of alienation*, and no more.

A widow who brings *ejectment* to recover her dower is entitled to *costs*, though the suit be brought *before admeasurement* of dower.

EJECTMENT for *dower* and *costs* of suit. The plaintiff, *before admeasurement* of dower, brought an *action of ejectment*, pursuant to the revised statutes, to recover *dower* in lands of which her husband was seised during the marriage, but which he had aliened as long since as 1792, at which time the lot out of which dower was sought was in a state of nature, uncultivated and unimproved, and its value did not exceed $200. The plaintiff recovered a verdict in the ejectment suit,

had her costs taxed and judgment roll signed and filed, and obtained the appointment of commissioners to make admeasurement of dower. The commissioners made admeasurement, assigning to the plaintiff *one third of the lot,* and certify that the value of the part assigned to her is $4600, and that the value of the *whole lot* at the time of the admeasurement, independent of all improvements by the erection of buildings, &c. is $13,800. It appeared that the portions of the lot remaining in a state of nature are as valuable, if not more valuable, than those portions of it which are occupied and under cultivation. The defendant produced the affidavits of several individuals, who testified that the whole increased value of the premises since 1792, arises from the improvements made upon the premises thus sold, and upon the lands in the vicinity, all of which were of little value in 1792 ; and as the value of this lot is enhanced by improvements on the adjoining lots and on the lands in the vicinity, so those lots have been enhanced in value by the improvements on the lot in question. The defendant *appealed* from the report of the commissioners, and at the same time moved that the *costs* in the action of ejectment be stricken from the record.

*D. Cady,* for the defendant. The commissioners have erred in their admeasurement of dower ; it is the settled law of this state, that the *dower* which a widow is entitled to in lands claimed by the husband during the marriage, is *one third of the value at the time of alienation,* and no more. 2 *Johns. R.* 484. 11 *id.* 510. 15 *id.* 22. Nor is the widow entitled to *costs,* where she brings ejectment *before admeasurement.* Ejectment is substituted for the action of dower, and although the phraseology of the statute allowing costs in all actions relating to real estate, 2 *R. S.* 613, § 3, is broad enough to include this action in terms, it is insisted that the statute should receive such a construction as to exclude it, unless a case is shewn which would have entitled a widow to damages and costs, under the law as it existed previous to the revised statutes. *Tout temps prist* would have precluded the demandant in dower from her claim to damages, and it cannot be supposed that the legisla-

Walker
v.
Schuyler.

ture intended, by changing the form of action, to alter the substantial rights of parties, and subject tenants *not in fault* to damages and costs, who, previous to the revised statutes, could not thus have been made liable.

*C. P. Kirkland,* for the plaintiff. It is admitted that previous to the revised statutes, the rule, as contended for on the other side, in relation to the extent of the widow's rights appears to have been settled by a series of decisions; but subsequent to these decisions, the law as originally passed by the legislature, 1 *R. L.* 56, § 1, that the widow should have *the third part of all the lands* of her husband, and which, by the construction of our courts, was reduced to the *one third of the value at the time of alienation,* is re-enacted, and the legislature have once more declared, in view of the decisions made by our courts, that "a widow shall be endowed of a *third part of all the lands* whereof her husband was seised of an estate of inheritance at any time during the marriage." 2 *R. S.* 740, § 1. With all due deference, it is supposed that the act of 1806, 1 *R. L.* 61, § 5, clearly indicates that the only limitation, contemplated by the legislature, upon the rights of the widow was, that she should not have the benefit of *improvements made by the heir or other proprietor* of the land, but not that she should be deprived of its *increased value,* arising from extrinsic and general causes, and not from the labor or expenditures of the heir or other proprietor; and such appears to be the opinion of Chancellor *Kent,* in his view of the decisions of our court, 4 *Kent's Comm.* 64 *to* 70. See also 1 *Cowen,* 460.

As to the question of costs, it is not perceived what possible objection can be made. The case is directly within the words of the act giving costs, and the defendant has no right to ask for an equitable construction exempting him from costs, as it was entirely within his power to have prevented the suit by the widow, by having procured an admeasurement to be made. 2 *R. S.* 489, § 7.

*By the Court,* SAVAGE, Ch. J. The language of the *revised statutes* is as follows: "A widow shall be endowed of the third part of all the lands whereof her husband was seised of

an estate of inheritance at any time during the marriage." 2 *R. S.* 740, § 1. The act of 1787 was in nearly the same language. After declaring that the widow shall give nothing for her dower, that she shall tarry 40 days in the mansion house of her husband, &c. it is enacted as follows : " and for her dower shall be assigned unto her the third part of all the lands of her husband, which were his at any time during the coverture." 1 *R. L.* 56, § 1. The statute of 1806 declares that " Dower of any lands sold by the husband shall be according to the value of the lands, exclusive of the improvements made since the sale," 1 *R. L.* 60, § 1, and points out a mode in which either the widow, or the heirs, or other owners, may proceed to have dower admeasured and assigned by persons to be appointed by the surrogate ; and directs, " where any testator or intestate shall have been possessed of lands wild and unproductive, it shall and may be lawful for the admeasurers to take into view any improvements made upon any wild lands by any such heirs, or other proprietors or owners, and award the said improvements within the bounds of that part of the estate which shall be allotted to such heirs or other owners." The revised statutes also provide that a widow may tarry in her husband's house 40 days after his death, free of rent, and have her sustenance, whether her dower is assigned to her or not, 1 *R. S.* 742, § 17 ; and in making admeasurement, the commissioners appointed for that purpose shall take into view any permanent improvements made upon the lands out of which dower is to be assigned, since the death of, or alienation by the husband ; and they are directed to allot such improvements to the heir or owner, if practicable, and if not, then to make a deduction from the widow's part, proportionate to the benefit she will derive from such improvements. 2 *R. S.* 490, § 13. So also, where damages are recovered, they shall not be estimated for any permanent improvements made by the owner, whether heir or grantee of the husband. 1 *R. S.* 743, § 21.

From this examination and comparison of the old and new statutes, it will appear that the rights of the widow are not altered as to the extent of her dower. The third part of the lands of the husband means *one third part of the value of the*

UTICA,
July, 1833.

Walker
v.
Schuyler.

*lands when the title passed from the husband.* In case of aliena⸱ tion by the husband in his lifetime, the point has been settled by several adjudications. In the case of *Humphrey* v. *Phinney,* 2 *Johns. R.* 484, the action was dower, and the defendant pleaded alienation by the husband in his lifetime, valuable improvements by the defendant, and readiness to set off one third in value, as at the time of the conveyance. On demurrer to this plea, the court held that the principle assumed by the plea was correct ; that the widow was not entitled to dower according to the improved value of the land, in case of alienation by the husband, but according to the value at the time of alienation. This decision was made in 1807, and the court took occasion to say that the act of 1806, 1 *R. L.* 60, did not in that respect establish a new rule, and they refer to the year books for the same rule. The reason for the rule assigned by Sir Mathew Hale is quoted with approbation, that the heir is not bound to warrant, except according to the value of the land at the time of the feoffment ; and if the widow were to recover according to the improved value, the feoffee would not have a complete remedy against the heir, which would not be reasonable. It is true that in that case the question was not whether the widow should participate in the enhanced value of the lands, independent of the money expended upon it ; but the learned chief justice, in giving the opinion of the court, takes no such distinction ; his reasoning is equally applicable to any appreciation in value, whether in consequence of money expended in improvements, or of the general rise of the property independent of that circumstance ; and the reason of Sir Mathew Hale is equally applicable to both. The same question which is now presented was distinctly brought before the court in the case of *Dorchester* v. *Coventry,* 11 *Johns. R.* 510. The value of the land at the time of alienation was found by the jury to be $500, and at the time of the trial $1750, exclusive of buildings erected since the alienation, and the question was, according to which valuation dower was to be assigned. Chief Justice Thompson said the case could not be distinguished from *Humphrey* v. *Phinney,* the principle of which was that the widow was not entitled to the improved value, but the value at the

time of the conveyance by the husband, and that the legisla-
ture had not made any distinction between improvements and
the increased value of the land ; that the same principle ap-
plies to both.    The case of *Shaw* v. *White*, 13 *Johns. R.* 179,
was like this case.    The land was conveyed by the husband
in 1765, when new and unimproved, and the suit was brought
in 1815, when the lands had been highly improved and culti-
vated by the defendant.   The court said that the rule by
which the recovery must be regulated was laid down in the
two previous cases; that under the statute, 1 *R. L.* 60, the
widow was entitled to one third of the value at the time of
the conveyance by the husband, and that she does not have
the benefit of the improvements, or of the increased value or
appreciation of the land.    This is the last case I have found
upon the point, and it was decided 17 years ago.    This rule
has therefore been the only one established and acted upon
for at least 26 years.   As the legislature have not altered the
rights of the widow by the late revision of the statutes, the
court must apply the same rule to the plaintiff which has
been applied to all others ; she is entitled to so much as shall
be equal in value to one third of the value of the lands at the
time of the conveyance by the husband, and no more.

   This subject has been recently discussed by Chancellor
Kent, in his Commentaries, 4 *Kent*, 64 *to* 70 ; and he consid-
ers the rule as above stated to be the ancient and settled rule
of the common law.    The reason of the rule, he says, has been
ably criticised in this country, but the rule itself is founded in
justice and sound policy.    The distinction between the in-
creased value of the land, as arising from the direct improve-
ments by the alienee or from extrinsic causes, does not seem
to have been taken in the English books.    The chancellor,
pages 66, 67, admits that the statute of 1806, in this state,
has received the construction above given to it, though he sug-
gests a doubt whether it is not too strict, and thinks that the
better and more reasonable American doctrine is, that the im-
proved value from which the widow is to be excluded, is that
which has arisen from the actual labor and money of the
owner, and not that which has arisen from extrinsic and gen-
eral causes.    Whether the chancellor is correct or not in this

conclusion, I am not to inquire. It is sufficient for my pur-
pose, that in this state the widow's rights have been frequent-
ly adjudicated under a statute like the present statute, and we
are not at liberty to depart from the construction which has
been given to it. I may however remark, that any other rule
than that adopted by this court would be difficult of applica-
tion. It is not easy to say how much of the appreciated val-
ue has arisen from the labor and money expended upon the
land. In this very case, some of the witnesses state that the
whole improved value arises from the improvements made up-
on the land in question and the other lands in the same por-
tion of country, all of which were of little value when this lot
was sold by the husband of the plaintiff; and they say that
as this lot is enhanced in value by improvements on the ad-
joining lots and those in the vicinity, so those lots have been
enhanced in value by the improvements on this; and thus
each lot may be said to be enhanced in value by the labor and
money expended upon it by its own owner. This is certain-
ly true to a great extent, if not to the full extent, of the en-
hanced value. Can any one say what would have been the
present value of the lot in question, if the whole western part
of the state had remained as it was in 1792 ? and what would
the plaintiff's dower be worth if the whole country was a wil-
derness ? It must be mere conjecture. It is certainly reason-
able that the enhanced value should enure to the benefit of
those through whose labor and sufferings and expenditures
the appreciation has been procured. If the property has been
rendered more valuable by the general improvement of the
country, the defendant, and not the plaintiff, has contributed
to that general improvement.

On the question of costs, the rule formerly was, that the
plaintiff in dower recovered costs whenever she recovered dam-
ages, and not otherwise. 10 *Johns. R.* 216. 2 *Saund.* 328.
By the revised statutes, costs are recoverable in all actions re-
lating to *real estate,* 2 *R. S.* 613, § 3, among which the action
of ejectment to recover dower is enumerated; and the old ac-
tion of dower is abolished, 2 *R. S.* 303, § 1, 2, and 343, § 24.
The plaintiff is therefore entitled to costs of the suit until judg-

ment establishing her right. The costs of admeasurement are to be paid by the parties equally. *2 R. S.* 492, § 25.

The report of the admeasurers is set aside, but without costs of this motion.