RANKIN, BLAIR AND GANTT vs. OLIPHANT AND WIFE.

1. The assignment of dower in leasehold estates under the statute, is governed by the same rules which prevail in estates of inheritance.

2. If the husband die seized, the widow is entitled to be endowed of one third of the land at the time the dower is assigned, as well against a purchaser under a sale by order of a court as against the heir.

3. *Tout temps prist,* cannot be pleaded by a purchaser under such sale, to the petition of a widow for her dower. But she is entitled to recover damages from the death of her husband, and no demand is necessary.

ERROR to St. Louis Circuit Court.

GANTT, for Plaintiffs in error.

POINTS AND AUTHORITIES.

1. The demandants were entitled only to dower of the unimproved value of the premises.

2. That they were only entitled to damages from the time of making demand of dower, i. e. from Oct. 10th, 1843.

3. That the plea filed by defendants below, plaintiffs in error here, was good, and entitled the defendants to costs, and a judgment according to the plea.

4. That the judgment of the circuit court was erroneous, both in overruling the plea, and in giving judgment on the case stated.

A. 'TODD, for Defendant in error.

POINTS AND AUTHORITIES.

1. Eliza Oliphant is entitled to dower in the premises. Revised Statutes, p. 228, § 1.

2. She is entitled to an assignment of her dower, with the benefit of the improvements, and of the increased value of the premises from other causes. Roper on husband and wife, p. 349 & 350–4; Kent's Com. p. 65 to 70; Mason's Rep. 347; 5 Serg. & Rawle Rep. 289; 1 Hilliard's Abr. § 14, 15, 16, on p. 71–2; and § 30 to 33, on p. 103–4; Park on Dower, 339.

3. She is entitled to damages for detention of her dower since the death of her husband. Rev. Statutes, p. 329, § 16. Park on Dower, p. 305–6. Her husband died seized, and no assignment was made within 12 months thereafter.

4. The defendants below cannot plead *tout temps prist.* Park on Dower, p. 305; Roper 436.

NAPTON, J., delivered the opinion of the court.

Oliphant and wife filed their petition in the circuit court of St. Louis county praying for an assignment of dower in certain leasehold estate in the city of St. Louis.

The petition set forth, that the said leasehold was for the term of fifty years, from the 31st January, 1834; that it formerly was the property of one Spencer, the former husband of the petitioner, Mrs. Oliphant; that said Spencer died in 1837; that the petitioner had never released her dower in said property, and that Rankin, Blair and Gantt, were in possession of the premises.

The defendants pleaded, admitting the truth of the facts alleged in the petition, but averred that at the December term, 1841, of the probate court of St. Louis county, the administrator of said Spencer's estate, by order of said court, sold said Spencer's interest in said leasehold property to Rankin, for $5000; that the property at this time was wholly unimproved; that Rankin sold a portion to Blair and Gantt, upon which B. & G. erected buildings, and that Rankin built upon his part; that they had no notice of Mrs. Oliphant's claim until just before suit brought; that they then offered her a yearly sum equal to the value of her dower, with damages for detention since notice of her claim; that they now offer the same and bring the money into court, &c.

To this plea there was a demurrer, which was sustained by the court, and the court gave judgment for the petitioners.

An agreement was filed in the case ; from which it appeared, that the facts stated in the plea were true, and the annual value of the premises, both when unimproved and since improved, were ascertained, and it was also agreed that the premises were incapable of subdivision.

Judgment was given that the widow be endowed with the improved value of the property, and for damages from the death of her husband. These damages were computed at the rate of one-third of the unimproved value of the premises up to the time of the completion of the improvements, and for the time since elapsed, at the rate of one-third of the unimproved value.

The defendants took a bill of exceptions, preserving all the facts, and brought this writ of error to reverse the judgment.

The principal question arising from the record is, whether the widow is entitled to one-third of the improved value, or only one-third of the unimproved value of the leasehold estate.

As the common law did not give any dower in an estate less than a freehold of an inheritance, the rights of the petitioner depend solely on the provisions of our statutes, the first section of which declares that "dower in leasehold estate for a term of twenty years, or more, shall be granted and assigned as in real estate." The term real estate, when used in other parts of the code, is declared to mean any interest in lands, tenements or hereditaments, and is sufficiently comprehensive to embrace that interest, which by the common law was regarded as a mere chattel, and was therefore termed a chattel real. This clause of the first section is therefore inartificially expressed, designing, as it most obviously does, an enlargement of the common law estate in dower, and causing it to embrace chattels real, (where the estate was for twenty years,) as well as freeholds of inheritance. The grant and the assignment of dower in this leasehold interest, is to be governed by the same principles which regulate its assignment in other cases. We will, therefore, in the investigation of the main question, consider the case as one of a descendible freehold.

It is well settled, that where the husband dies seized of lands, the wife shall be endowed of them according to their value at the time of the assignment; but that where lands have been aliened during the husband's lifetime, she shall only be entitled to one-third of their value at the time of the alienation. The reason for this distinction given by the ancient law writers, is that the heir is not bound to warrant, except according to the value of the land as it was at the time of the feoffment,

and so the wife if she were to receive according to the improved value, would recover more against the feoffee, than he would recover in value against the heir, which would be unreasonable. (Co. Litt. Harg. lib. p. No. 163.) The rule is different where the husband dies seized, and the heir or his alienee improves the land, for it is his own folly, and the widow takes the value as it is at the time of the assignment. 2 John. R. 484; 13 J. R. 779; 6 J. C. R. 266; 11 J. R. 510; 13 J. R. 179; 4 Kent. Com. 67. The reason given for this distinction in favor of the alienee of the husband, has in several modern cases been doubted or disavowed; but the distinction itself has been uniformly maintained, as founded upon clear principles of justice, and sound views of public policy. 4 Kent. Com. 65.

The case now under consideration, is not the case of an alienation by the husband, nor is it the case of an alienation by the heir, after a decent cast. Hence the principles heretofore established, cannot be conclusive of the merits of the present question. Our statute, which makes leasehold estates dowable, is an innovation upon the common law, and a similar innovation has not, so far as my examination has extended, been made in any other State. Consequently the decisions in England and in the United States, cannot have, except by analogy, any bearing upon the question.

On the one hand, it is contended, that the situation of the plaintiffs in error is precisely similar to that of the alienee from the husband; that the same motives of justice and principles of public policy which induced an exception in favor of the alienee of the husband, would warrant a like exception in favor of the purchasers at the judicial sale; that the statute concerning administrations, in accordance with the provisions of which this land was sold, favors this interpretation of the act concerning dower, by declaring that the deed made by the executor or administrator, shall convey "all the right, title and interest, which the husband had at the time of his death, free from his debts," &c.; that consequently this judicial sale relates back to the period of the testator's death, and the purchaser takes his title, as it were, from the testator himself; and that in this case especially, which is only a leasehold interest, as no descent is cast upon the heir, the purchaser may, with the greater propriety, be viewed as a *quasi* alienee of the husband.

On the other hand, it is insisted that the title of the wife to her dower is vested by the death of the husband, and that the sale by the administrator, either of an inheritable freehold or a leasehold for twenty years, as it cannot defeat the wife's dower, can neither place

the purchaser in a more eligible position than the heir or adminis-trator.

The question is certainly not without its difficulties. These difficulties, however, so far as the present branch of the subject is concerned, arise from the failure of the legislature in providing the details by which the general provision, embracing leasehold interests, was to be enforced, or in conforming the subsequent provisions of the act to this change. The legislature have declared that leasehold interests of a specified character shall be dowable, and have also provided for the sale of such interests, as well as every other real estate of a deceased person, for the payment of his debts, subject to the widow's dower. Further than this the statute is silent. The 16th section of the dower law, it is true, enacts, that where a widow is entitled to dower in real estate, and cannot have it without suit, or is deforced of her dower, or it is unfairly assigned, or not assigned within twelve months from the husband's death, she may sue for, and recover the same with damages. The section then specifies the extent of the damages, which is the value of her dower from her husband's death, if he died seized, or from demand, where he did not die seized. This is, in substance, the statute of Merton. This provision no way illustrates the question at bar, except that it conclusively establishes the position we assumed at the outset, that terms, for years, were embraced in the term "real estate," and the word *seizen* is designed to apply to such interests, as well as to estates of inheritance. There is no other provision giving damages in the act; and after declaring in the first section that leaseholds for twenty years were to be dowable as estates of inheritance, they are described and included in the general phrases peculiarly and appropriately adapted to freeholds in every subsequent clause of the statute. There can be no impropriety, then, in treating the question at bar, as though the interest of Mrs. Oliphant was a freehold, for it is obvious that whatever rule be adopted as to one, must prevail in both species of estates.

If we recur to the reasons for exception in favor of the husband's alienee, the most striking and forcible one given in favor of the rule, is the uncertain, contingent and defeasible interest of the wife at the time of the alienation. One of the three incidents to the estate in dower, the death of the husband, is wanting. The estate is yet inchoate, and may never become a vested interest, for the husband may outlive the wife. To encourage, therefore, the improvement of lands so situated, it was thought politic to limit the dower of the widow to one-third of their value at the time of the alienation. Not so where the husband

dies seized; the right of the dowress is then fixed, and though the descent is cast upon the heir, until an assignment is made, the widow, so soon as she has her dower assigned, does not hold of the heir, but is in, from the death of the husband. The heir therefore, when the ancestor dies seized, in making improvements upon the estate, does so with a full knowledge of a vested and indefeasible estate in the widow, and is in the situation of any other person building on land which he knows to belong to another.   So the alienee of the land stands in no .better predicament than his alienor.   Another consideration which doubtless had its influence in exempting the alienee of the husband from any responsibility for an increased value of the lands, arising from the expenditure of his money or labor, was the length of time which in many such cases would elapse before the consummation of the title.   No such considerations operate in favor of the heir, or, we may add, the executor, for by the common law the heir or terre-tenant, and by our statute the executor, or the creditors of the deceased, could at any time cause an allotment of dower to be made.

Supposing the estate of Mrs. Oliphant to be an estate of inheritance, what was its condition on the death of her husband?   By the common law it descended to the heir; and in the case of Mackay's admr. vs. Burdine, notwithstanding an ingenious argument was drawn from our administration act, to show that the common law had, in this respect, been altered, and that lands in this State vested in the administrator or executor, this court held that the descent was still under our statute cast upon the heir.   True, it descends, subject to the payment of debts, and subject to the widow's dower.   When the dower is ascertained and set off, the widow is in from the death of her husband; and so the purchaser of real estate, sold by the administrator to pay the intestate's debts, takes the title as it stood at the death of the intestate.   Either event defeats the title and estate of the heir, but until either event takes place, the heir has the title.

So far, then, as the heir is concerned, where the estate is in freehold of inheritance, we have seen that the question now under consideration has been settled.   In what respect, then, would the purchaser at a judicial sale be in a more favorable position than a purchaser from the heir?   There is no pretence that such a sale could divest the widow's right of dower, and the purchaser is presumed to be cognizant of the law in this respect.   The right of the widow has become vested and fixed by the death of the husband, as much so, when the land is sold by the order of the county court, as when it is alienated by the heir, and it is difficut to see any principle of law which would operate upon

Rankin, Blair and Gantt vs Oliphant and Wife,

the alienee of the heir, which would not apply with equal force to the purchaser at sale.

The character of Mrs. Oliphant's estate, as we have observed, will not affect the merits of the title. Her husband's term was but a chattel interest, and did not descend to the heir, but passed to the administrator. But so far as the power of the administrator is concerned, there is no distinction in our law between estates of inheritance, and chattels real. They are both liable for the debts of the ancestor, and both can be sold on the application of the personal representative, for the payment of debts. The statute which makes terms for years dowable, must be understood as placing them in all respects, upon a footing with descendible freeholds. It is impossible to make one rule for them, and another for the estates of inheritance, in relation to the rights and remedies for the dowress. "Dower in leasehold estate," says the act, for a term of twenty years or more, "shall be granted and assigned as in real estate." Whatever rule, therefore, shall be applied to the assignment of dower in real estates, (or rather estates of inheritance,) shall be applied to leasehold interests. They are *pro hac vice* declared estates of freehold.

If it were a descendible freehold, could there be any doubt about Mrs. Oliphant's right to one-third of the land at the time of the assignment? The argument designed to bring the plaintiffs in error, within the exception of the general rule of law, made for the benefit of alienees of the husband, proves too much. If a sense of justice pleads strongly in favor of the plaintiffs in error, as purchasers at a judicial sale, it would only show that no dower at all existed in the lands so sold. But it is admitted that the right of dower was not extinguished by the sale. It is conceded that the general principle of law gives the dowress one-third of the land at the time of the assignment, and that an exception to that rule has been made heretofore, in one case only—the case of the husband's alienee. It would seem more appropriately to devolve upon the legislature, if other exceptions are desired, or thought necessary, to declare so by statute. The law as it now stands, does not warrant the courts in making such a rule.

The remaining branch of this inquiry relates to the damages. The statute of Merton allows the widow damages when the husband died seized, from his death; and our act contains the same provision. But the uniform construction given to that statute, has been that the damages are computed from the time of the demand upon the heir, and hence the plea of *tout temps pris* has been allowed the heir. 1 Th. Co. Litt. 586, 326; 4 Kent's Com. 464. Lord Coke says, the reason why

*tout temps pris* is a good plea in a suit of dower against the heir is, because the heir holdeth by title, and doth no wrong until a demand is made ; but he is further of opinion, that the alienee of the heir cannot plead this plea, because he had not the land all the time from the death of the ancestor, and could with no truth say that he had been always ready to assign the widow her dower. The widow was so far favored as to be put to only one suit to recover her damages, and the alienee of the heir was left to his recourse upon the heir, for such damages as he was compelled to pay during the tenancy of the heir. Our statute provides, that the suit for dower may be instituted against any person claiming any interest in such lands, or being in possession thereof, or who shall deforce her of her dower therein. By the common law, only one who would be a good tenant to the precipe, could be made defendant. It is not perceived how this difference can affect the rights of the dowress to the damages given her by the statute. Our statute is express, that damages shall be awarded, from the death of the husband, wherever the husband has died seized; and if we adopt the construction given to the statute of Merton, allowing the heir to plead *tout temps pris* there seems to be no reason why the limitation which excluded the alienee of the heir from the benefit of such a plea, should not be applied to such terre-tenants as may be made defendants under our laws. The same reason which was given for denying this plea to the alienee of the heir, applies to the present defendants.

Judgment affirmed.

TOMPKINS, J., dissenting.