## BARNEY v. FROWNER AND WIFE.

1. The Orphans' Court has not jurisdiction of a petition for the allotment of dower.

2. An allotment of dower cannot be made under the statute, but in those cases where the dower estate can be designated by metes and bounds.

3. Upon the petition of the widow, her right to dower may be ascertained by the court, those claiming adversely being cited to contest it; and when the allotment is made, she is to be put into actual possession.

4. Dower cannot be claimed against several alienees from the husband, by the same petition.

5. Where the husband aliens, the widow is not dowable of the enhanced value of the property, by the erection of buildings, and other improvements made by the alienee, but of the value of the land at the time of the alienation. *Quere?* as to the increase of the value of the property, from the operation of other causes, not connected with improvements made by the purchaser.

Writ of Error to the Orphans' Court of Mobile.

PETITION by the defendants in error, for the allotment of dower. The petition was filed by Mary A. Frowner, widow of Samuel Acre, for dower in six several parcels of land in Mobile, which had been aliened by her husband in his lifetime, and to which she had not relinquished her dower. The court proceeded to hear, and determine upon the matter, and directed a writ to issue to the sheriff, commanding him to proceed, and cause an allotment to be made. An allotment was made, and being set aside by the court, a new allotment was made, received by the court, and ordered to be recorded.

It does not appear from the proceedings, who was the legal representative of Samuel Acre, deceased, nor was any advertisement made in the gazette of the application for dower.

Many assignments of error were made, denying the jurisdiction of the court, and the regularity of the proceeding, which are sufficiently noticed in the opinion of the court.

STEWART and FISHER, for plaintiffs in error.

This is an application for dower, in lands sold by the husband in his life-time, and improved since by the purchaser.

The statute remedy is not appropriate in such a case. Under it, the court has only power to admeasure and divide, when the right is not disputed. It cannot try title, or make compensation. [9 Mass. 9 ; 4 Bibb, 462; 4 Wendell, 630 ; 9 Johns. 245; 20 id. 411; 3 Dana, 371.]

When the husband has aliened the land, the right of the widow is to be computed at one-third of the value, as it was at the time of the alienation. [4 Kent's Com. 64; 4 Leigh, 498; 2 Johns. 484; 11 Johns. 569; 6 Johns. C. 258 ; 13 Johns. 180; 1 Lomax Dig. 103, § 42; 6 Dana, 471; 7 id. 175.]

Where there is any land unsold, that should be first set out to the widow, before any portion of the land sold can be allotted to her. [6 Dana, 471; 4 W. C. C. R. 305.] When the property is improved, and cannot be divided by metes and bounds, the court must allot otherwise. When it cannot be divided properly, it is often necessary to give it in money, and then the rule is to give one-sixth of the value, independent of improvements.

The defendant may show, that although he entered under the husband, he holds the land by an adverse, and superior title. [4 Dana, 68; 10 N. H. 403.] He may rely on a legal title, and deny the seizin of the husband, which can only be tried in a common law court. [2 G. & J. 468; 8 id. 50.] Or the dower may be of an equitable estate, and then it can be tried only in equity.

Neither a court of law, or chancery, can have full jurisdiction of all the questions which may arise, it often requires both, and insuperable difficulties will arise in the attempt to adapt the statute remedy to all cases. The true construction, doubtless is, as held in other States on similar statutes— that the court can try no right, but merely make partition when there is no controversy.

The statute which authorizes the dowress to be put into possession, was not intended to dispossess parties claiming adversely. The possession meant by the act, is investiture of title. If it be vacant, the dowress may enter ; if obstruct-

Barney v. Frowner and Wife.

ed, she must resort to her ejectment. [9 Johns. 245; 4 Wend. 634; 20 Johns. 411.]

The statute remedy is conferred on the Circuit and County Court—the Orphans' Court is a distinct jurisdiction. [Hopper v. Todd, 8 Ala. 121.]

There is a misjoinder of parties. The purchasers from the husband claim by distinct titles, and cannot be united in the same litigation, as their defences may all be different.

The proper parties were not made. The executor or administrator should have been a party, or advertisment as the statute requires, neither of which was done in this case, nor were the *terre-tenants*, properiy before the court. [7 Porter, 19; 7 Ala. 474.]

PHILLIPS, contra.

ORMOND, J.—This proceeding is radically defective. The statute requires ten days notice of the application for the allotment of dower, to be given to the executor, or administrator, when they do not reside in the same county with the widow, or when she is herself, the executrix, or administrator, the notice is to be given by advertisement in a newspaper published four successive times. [Clay's Dig. 173, § 6.] The petition does not show whether there is any personal representation, of the estate or not. No citation has issued to any one as such, nor has any advertisement been made; it is therefore evident that the requisitions of the statute have not been complied with, and this being a summary remedy, given by statute, can only be supported by conformity to its provisions.

There are also many other irregularities. It does not appear that Elizabeth Acre, one of the heirs, was notified. No proceedings were had upon the death of Margaret Johnson, another heir, except the suggestion of her death upon the record. Nor does it appear that all the *terre-tenants* were regularly before the court, as was held to be necessary in Green v. Green, 7 Porter, 19. For these reasons this proceeding must be reversed; but to enable the party to proceed cortectly, it is proper to express an opinion upon the other points named in the argument.

It is objected, that the Orphans' Court has no power to entertain this petition. The statute giving this remedy, passed in 1812, and authorizes the widow to file her petition, in the " Superior, or County Court, in the county where the husband shall have usually dwelt," &c. At the time of the passage of this act, the County Court was held by five justices, who were authorized to hold the County Court, and Orphans' Court, of their respective counties. [Toulmin's Dig. 175]—the County Court being held twice a year, and intermediate courts for orphans' business; the chief justice being privileged to hold a special term of the Orphans' Court, whenever he thought proper, and an appeal being allowed from any decision made at such special court, to the next regular term of the Orphans' Court. [Ib. 180.] From this, it appears, that at the time of the passage of this act, the County and Orphans' Court, were distinct and separate tribunals, though held by the same persons, having their jurisdiction distinctly marked—the Probate, or Orphans' Court, having jurisdiction of all matters pertaiuing to the probate of wills, the estate of infants, &c. whilst the County Court had jurisdiction of civil actions, except real actions, ejectment, & and where the amount in controversy did not exceed $1000.

This system was modified in 1819, and abolished in 1821, by the establishment of the present system, in which the same distinction is observed as to the powers conferred on the County Court, as a court of common law, and upon the Judge of the County Court as to the probate of wills, and other testamentary matters. Since that period, though generally the appropriate designations of these courts is preserved, in some instances there has been some confusion introduced, by the indiscriminate use of the terms Orphans' and County Court, but the subject matter usually pointed out, the forum intended to be indicated. In this case, there is nothing extrinsic, which can shed any light upon the subject, and judging of the meaning of the legislature, from the use of the terms employed, " Superior, and County Court," we are constained to think, the common law court, held by the five justices twice a year, was designated, and not the Orphans' Court, which under the act of 1810, was then usually held by the chief

justice for the probate of wills, granting letters of administration, &c., and from whose decision, an appeal lay to the next "Orphans' Court" of the county.

It is further argued, that the statute jurisdiction can only be exercised, when the right of dower is not disputed, and when an admeasurement of dower can be made by metes and bounds.

In Green v. Green, 7 Porter, 19, we had occasion to give the act under which this proceeding originated, an extended examination, and we then considered the act to be, an effort on the part of the legislature to give the dowress a summary remedy for her dower, instead of the dilatory, and expensive proceeding at common law. She is authorized to petition the Circuit, or County Court, that her dower be alloted to her, describing the lands in which she claims dower, and it is therefore made the duty of the court to issue its writ to the sheriff, to summon five discreet freeholders, who "shall allot, and set off, by metes and bounds, to the said widow, one-third part, according to quality and quantity, of all the lands, &c., and shall put her in possession of the same, which shall vest in her, an estate for her natural life," &c. [Clay's Dig. 173, § 5.]

It is manifest, we think, that it was not the design of this enactment to embrace those cases where dower could not be assigned out of the land, and the dower interest designated by visible boundaries. When that is impossible, and where a compensation must be made in money, in *lieu* of dower, out of the land itself, it is clearly neither within the letter or spirit of the statute. But we can see no reason, where an allotment can be made, by metes and bounds, why the right of dower cannot as well be tried under the statute remedy, as by the common law mode of procedure. The executor, heir, and *terre-tenant*, are required to be notified, and may become parties to the suit, and any defence which they could make to her claim if she proceeded at common law, would be available to them under this summary proceeding, which, as was held by this court in Green v. Green, *supra*, was only intended to simplify, and expedite the claim of the widow to dower, without impairing any defence which might exist against it.

114

The cases cited from the New York, Massachusetts, and Kentucky Reports, have no application here. In the States of New-York and Kentucky, the statutes on this subject, merely authorized the ordinary, or surrogate to assign dower, but do not contemplate a trial of the right, or putting the widow into possession, and if that is withheld, she is driven to her action of ejectment. It is only necessary to advert to the case of Kintch v. Cunningham, 4 Bibb, 462, and the matter of Mary Watkins, 9 Johns. 244, to be sensible of the broad distinction, between the statutes of those States, and our's, upon this subject.

From the case of Sheafe v. O'Neil, 9 Mass. 9, it appears that there is no statute in Massachusetts, expressly authorizing the ordinary to assign dower, but it appears to be exercised by implication, from a colonial statute, which did not contemplate a trial of the right of dower, but that the dower should be assigned in those cases, where the right was not controverted.

Our statute contemplates a contestation of the widow's right of dower, and provides the necessary means for ascertaining it. For this purpose, the heir, and the tenant of the freehold are to be notified of the application, and may contest the right, and finally, if decided in favor of the widow, the statute directs the sheriff to put her in possession. This is not a mere legal investiture of the title, leaving her to obtain the possession by suit, if not voluntary yielded; but a possession in fact, as well as in law. Such is the express language of the act, and the construction contended for, would deprive it of any sensible meaning.

This being a substitute for the common law made of procedure, it would seen to follow necessarily, that dower could not be claimed of lands, aliened by the husband, and in the hands of several persons by the same petition. They might have several distinct defences, in which they had no common interest, requiring distinct issues of law, and fact. Such an incongruity as this, so foreign to the simplicity of the common law, it is impossible to suppose the legislature contemplated. In such cases it would be necessary to proceed separately against each. " Where the lands are in the hands of various purchasers," is one of the instances put by Judge

Story, when adequate redress can only be had in equity. [1 S. Com. 587, § 632.]

There may be, and doubtless are many other cases, in which the statute remedy would be either inadequate, or improper, but we purposely confine ourselves to the case before us.

Of what is the widow to be endowed, where the land has been aliened by the husband during the coverture? Of the value of the land at the time of the alienation, or of the improved value at the time of the assignment? This question may be considered in reference to the enhanced value of the land by the act of the alienee in the erection of buildings, and other improvements, and the amelioration of the soil, and its increased value from other causes, not connected with improvements made by the alienee. Upon this last aspect of this question, there is some diversity of opinion in this country, and as the point is not distinctly presented upon the record, we abstain from its consideration.

Mr· Park, in his treatise on Dower, 257, seems to consider, that the understanding of the profession in England, at this day, is, " that the wife shall be endowed of the land as she finds it at the time of her dower consummated," but he admits that the old authorities are the other way, citing Perkins, sec. 328, and Coke Litt. 32, a, n. 8. Mr. Hargrove, in his note on this passage, cites the year books to the following effect. " If the feoffee improve by buildings, yet dower shall be as it was in the seizin of the husband, for the heir is not bound to warrant, except according to the value as it was at the time of the feoffment, and so the wife would recover more against the feoffee, than he would recover in value, which is not reasonable." Whatever doubts may be thrown over the ancient doctrine in England, in this country it is decisively established. The question was most elaborately, and ably discussed, in Thompson v. Monroe, 5 S. & R. 289, and in Powell v. The Monson & B. Man. Co., 3 Mason, 365, in which the learning upon this subject is exhausted, and in which it is most satisfactorily shown, that the widow is not dowable of the enhanced value of the property, by the erection of buildings, and other improvements, but of the value of the land at the time of the alienation. See also Gore v.

Brazier, 3 Mass. 544 ; Catlin v. Ware, 9 id. 218 ; Ayer v. Spring, 10 id. 80 ; Tod v. Baylor, 4 Leigh, 498 ; Lawson v. Morton, 6 Dana, 471 ; Hale v. James, 5 Johns. C. Rep. 258.

As the Orphans' Oourt had not jurisdiction to entertain the petition for the assignment of dower, it can subserve no purpose to remand the cause.

Let the docree be reversed.