## WATERS *vs.* WILLIAMS.

[ACTION FOR USE AND OCCUPATION OF LAND.]

1. *Extent of widow's quarantine.*—A plantation, about eight miles distant from the husband's residence at the time of his death, and from which

he drew the greater part of his provisions and household supplies, is not so connected with the residence, (Code, § 1359,) as to entitle the widow to the possession or rents thereof until her dower is assigned.

2. *Action by widow for rents of dower lands.*—A widow cannot maintain an action at law, to recover the rents, or mesne profits, accruing from the lands assigned as her dower, from the death of the husband, to the time her dower was allotted : her only remedy is in chancery.

APPEAL from the Circuit Court of Marengo.
Tried before the Hon. A. A. COLEMAN.

THIS action was brought by Mrs. Mary E. Williams, the widow of Caleb Williams, against Allen G. Waters, who was the administrator of said decedent, to recover for the use and occupation by the defendant of a plantation which belonged to the decedent at the time of his death ; and was commenced on the 12th December, 1859.   By agreement between the parties, after the evidence was closed, the jury returned a special verdict, as follows:

"Caleb Williams, whose only occupation was that of a planter, some years before his death, had resided with his family on his plantation in Marengo county.   Three or four years before his death, he purchased a residence in the village of Jefferson, in said county, with about two hundred acres of land attached to it, and obtained a fee-simple title to it ; and removed with his family, and resided there until his death, which took place on the 1st January, 1857. After his removal to Jefferson, he declared that he had removed there for the purpose of educating his children. Some short time after his removal to Jefferson, he married the plaintiff, and had three or four children by her; and he continued to reside there, with his wife and children, until his death.   His plantation, which consisted of one thousand acres of land cleared and reduced to cultivation, was about eight miles from the dwelling-house.   For years before his death, and up to the time of his death, said Williams cultivated said plantation, with the slaves thereon belonging to him, and raised crops thereon; and his slaves were employed at the time of his death in making a crop thereon. While said Williams resided at Jefferson, the meal for his

family was sent from said plantation to his residence every week, and butter once or twice a week. The pork for his family was killed at the plantation, and sent to his residence; and fresh meat, such as pigs, mutton, and beef, was also sent to his residence, from the plantation, whenever ordered. His supplies of corn and fodder, and his milch cows, were also obtained from the plantation; and poultry, which was raised by the negroes on the plantation, was bought by him for himself and family, and taken to his residence. Some twelve or fourteen acres of the land attached to his residence was cleared by him; of which, one or two acres was planted with fruit trees for an orchard, and the residue (immediately around the house) was usually planted in peas, potatoes, and corn for roasting ears. During his life-time, and at the time of his death, said Williams kept about his residence three or four horses, and four or five slaves for house servants.

"Said Williams died intestate. About twenty days after his death, letters of administration on his estate were duly granted by the probate court of the county to the defendant, who qualified, and took on himself the burden of the administration, and took the control and possession of said plantation, slaves, mules, and farming utensils; and said slaves, mules, and farming utensils, were continued on said plantation, under his control and in his possession, in making a crop of cotton and corn, until the last day of December then next ensuing. The defendant did not interfere with the house servants, the dwelling, or the land attached thereto, or with any of the property at the residence; but the same remained in the possession, and under the control of the plaintiff, as the widow of the intestate, from the time of his death, to the end of that year. The intestate had an absolute title in fee to two hundred acres of said plantation; to four hundred acres he had a conveyance in fee from one Mitchell, but had not paid all the purchase-money at the time of his death, the balance (about $5,000) being paid by the defendant, as his administrator, since his death; and to the remaining four hundred acres

Waters v. Williams.

he had only a bond for titles, and had paid no part of the purchase-money. No dower whatever in the lands of said intestate was allotted to the plaintiff, until April, 1859. The year the defendant raised said crop on said plantation, the use and occupation of the land was worth one dollar and fifty cents per acre, making in all $1500. In December, 1858, the defendant, as administrator, made a partial settlement of his administration on said estate, with the probate court of said county. The plaintiff appeared, and was represented by counsel on said settlement; the defendant was charged with the sum of ten thousand dollars, the proceeds of the said crop raised by him on said plantation; and said court rendered a decree, of which the following is a copy," &c.

On the facts found in the special verdict, the court decided—" 1st, that the plaintiff, as the widow of said intestate, was dowable of six hundred acres of said plantation, and was entitled to recover of the defendant, in this action, the value of the use and occupation thereof for the time he had the same under his control and possession during the year in which the intestate died; 2d, that the settlement made by the defendant with the probate court did not estop the plaintiff from recovering in this action; and, 3d, that the plaintiff was not dowable of the four hundred acres of land for which the intestate held only a bond for titles, and had paid no part of the purchase-money, and that she was not entitled to recover the value of the use and occupation thereof." Each party excepted to the rulings and judgment of the court. The defendant now appeals, and assigns as error the rulings of the court in favor of the plaintiff's right to recover.

BROOKS & GARROTT, for appellant.
JNO. T. LOMAX, *contra.*

STONE, J.—Under the special verdict, or agreed facts in this case, the plantation, for the use and occupation of which the action was brought, was not "connected" with

"the dwelling-house where her husband most usually re-sided next before his death."—*McAllister v. McAllister*, 37 Ala. 484; *Smith v. Smith*, 13 Ala. 334. Hence, we hold, that this case does not come under the operation of section 1359 of the Code.

[2.] The principle above announced is decisive of this case, as made by the pleadings; but, as these may be modi-fied, we feel it our duty to pass on the plaintiff's right to recover, in an action at law, for the rents, or mesne profits, accruing from the lands assigned her as dower, from the death of her husband, to the time when her dower was allotted.

The widow's right to have dower assigned to her, is not a legal right in the land, nor in any portion of it.—See *Doe v. Webb*, 18 Ala. 814, and authorities cited. The lands, in the present case, are not covered by the widow's quaran-tine; and hence, on the mere strength of her right to be endowed, she could maintain no action to recover the pos-session, nor for the rents and profits of the lands.—*Inge v. Murphy*, 14 Ala. 289; *Shelton v. Carroll*, 16 Ala. 148; *You v. Flinn*, 34 Ala. 409; *Hayden and Wife v. Tucker*, in manuscript.

That chancery can furnish the plaintiff a remedy, and the only remedy to which she is entitled under the facts of this case, is clear on principle, and is fully sustained by au-thority.—*Slatter v. Meek*, 35 Ala. 538–9; *Perrine v. Per-rine, ib.* 644; *Barney v. Frowner*, 9 Ala. 901; *Beavers v. Smith*, 11 Ala. 20; 1 Story's Equity, § 626; *Turner v. Morris*, 27 Miss. 733; *Curtis v. Curtis*, 2 Bro. Ch. 619.

The judgment of the circuit court is reversed, and the cause remanded, that that court may make the proper order disposing of the case.