## WARE vs. OWENS.

[BILL IN EQUITY TO HAVE DOWER ASSIGNED.]

1. *Real property, whether partnership or individual.*—The mere fact that partners carry on a partnership business on a lot of land belonging to the members of the partnership, does not necessarily impress it with the character of partnership property, unless they have by agreement or otherwise purposely impressed upon it that character.

2. *Dower; governed by the law in force at death of husband.*—The widow's right to dower is governed by the law which was in force at the time of the husband's death, and not that which was in force at the time of marriage, or may have been during its continuance.

3. *Same; when land has been aliened by husband.*—In computing what sum a widow is entitled to as her dower interest under § 1370, R. Code, in the lands aliened by the husband in his life time, the register should take an account of the annual interest on one-third of the value of the land

at the time of alienation from the death of the husband to the term of the court to which the report is directed to be made, allowing interest on each year's interest from the end of such year to that term; and the widow is entitled to a decree for the sum so found, and also to a decree for the interest accuring each year during her life, subsequent to the decree, and the court can not make any allowances for taxes paid on the land or for anything else.

APPEAL from the Chancery Court of Montgomery. Heard before Hon. N. W. COCKE.

THE bill in this case was filed on the 11th day of October, 1865, by Elizabeth Owens against Robert D. Ware, and sought to have dower decreed to her in a certain lot or parcel of land in the city of Montgomery. According to the allegations of the bill, the complainant intermarried with R. B. Owen before the year 1847, and continued to be his wife until his death, which occurred on the 28th of October, 1862. Said Owen died intestate, leaving complainant and several children, his heirs and distributees. The deceased owned and possessed in his life time, a one-third undivided interest in and to the lot in which the complainant claimed dower, and on the 7th June, 1847, and during said coverture, conveyed by deed said undivided one-third interest of said lot to William O. Longworthy and Robert C. Collins. On the 1st January, 1851, the said Collins and Longworthy conveyed by deed said premises to William H. Rives and Henry Peebles. On the 4th June, 1851, Henry Peebles and wife released their interest to said premises to Rives. On the 23d March, 1852, Rives conveyed by deed said premises to James Porter, and paid to said Porter one hundred dollars, as full discharge of all liability on account of any claim the complainant might have to dower. On the first day of January, 1855, Rives and wife, and Porter and wife, conveyed said premises to Williamson & Peacock, and took from them a mortgage, with power of [sale. On the 5th February, 1856, Rives and Porter, in execution of said power of sale, conveyed said premises to Smith & Chapman; and on the 7th day of August, 1862, Smith & Chapman conveyed to Robert D. Ware, the defendant, who was the legal owner and in pos-

session of said premises. The said Collins and Longworthy paid to Rives and Peebles, two hundred dollars as a satisfaction of all claim that the complainant might have upon said premises for dower. On account of the improvements and character of said lot, it was impossible for dower to be set out by metes and bounds. The defendant, in his answer, set up as a defense to the complainant's right to dower, that the lot was partnership property, belonging to the firm of Collins, Longworthy & Owens, the said Owens being the late husband of complainant. On the 25th of May, 1867, the chancellor made a decree of reference, holding that the widow was entitled to dower in the said premises ; and as the dower interest could not be assigned by metes and bounds, required the register to ascertain the value of the premises at the time of the alienation thereof by the said R. B. Owens, deceased, and what the one-third dower interest of the said complainant in one-third of said value is ; and also ascertain the rents and profits of said premises since the filing of the bill ; and what the one-third of the one-third of the said rents and profits are since then, up to the next term of this court. The register made his report to the next term, September 16th, 1867, which was in all things confirmed, and the court thereupon rendered a decree for the rents and profits of said premises from the filing of the bill to the present term of the court ; and it was further " ordered and decreed, that the said Ware, on the first day of January next, pay to the said complainant, the interest at the rate of 8 per cent. per annum, on $366 66, from the said 16th September, 1867, to the said first day of January next, if the said complainant should so long survive, and that he also pay her on the first day of January in each sucessive year thereafter, during her natural life, the sum of $29 33 dollars, it being the amount of interest on said sum of $366 66, the value of her dower in the premises described in the pleadings in this cause ; and on which premises the complainant is now here decreed to have a lien to secure the payment of said interest. From this decree the defendant appealed, and assigned it, amongst other things, as error.

WATTS & TROY, for appellant.
MARTIN & SAYRE, contra.

BYRD, J.—1. The evidence is not sufficient to establish
the point made by appellant, that the lot was partnership
property. The deeds of the 6th of July, 1846, and 7th
June, 1847, executed by the partners, do not indicate that
the lot was held by them as partnership property, but as
tenants in common. And the fact that they carried on a
partnership business upon the lot, does not *necessarily* im-
press it with the character of such property. As Chief
Justice Collier says in the case of *Long's Heirs v. Waring*,
18 Ala. 153, " so far as the partners and ther creditors are
concerned, real estate belonging *to the partnership* is in
equity treated as mere personalty, and so it will be deemed
as to all other intents, if the partners have by agreement
or otherwise purposely impressed upon it that character."
In this case it does not appear that the lot belonged to the
partnership, although it belonged to the members thereof,
nor that they *purposely* impressed upon it the character of
*partnership property*. The question, therefore, whether a
widow of one partner is dowable of land belonging to the
partnership does not arise in this case. The court did not
err in decreeing that appellee was entitled to her dower
interest in the lot.

2. In the case of *Boyd v. Harrison*, 36 Ala. 533, this court
held that the widow's right to dower is governed by the law
which was in force at the time of the husband's death, and
not that which was in force at the marriage, or may have
been during its continuance. It is true, the husband in
that case was seized of the land at his death ; and in this
he had aliened it before the adoption of the Code. But
upon principle and the reasoning in the case cited, we can
perceive no distinction in the two cases, which would au-
thorize us to lay down a different rule as applicable to the
case in hand, from the one applied in the case of *Boyd v.
Harrison ;* so far, at least, as this question is concerned.

3. Did the chancellor err in allowing appellee one-third
of the rents from the time of filing the bill to the deter-
mination of the cause?

The bill alleges that "on account of the improvements on said lot, and the character of the lot, it is impossible for dower to be set out by metes and bounds"; and the Code provides "in such case, the widow is dowable of the value of the land at the time of the alienation, the interest on one-third part thereof, to be paid to her annually, during her life, and secured, if necessary, by a lien on the land, unless the parties agree to a compensation in gross, which the court must give effect to."—§ 1370.

Now, suppose the land was worth at the time of alienation, thirty dollars an acre, and at the time of the death of the husband, ten dollars an acre, with the improvements made by the purchaser, what would the widow be entitled to under this statute? It would seem, to "the interest" on one-third part of the value of the land at the time of alienation; and that, although, such annual interest might amount to more than the whole value of the land. This might seem a singular result, but so the statute reads. Suppose such interest amounts to more than one-third of the annual rents of the land, would she be compelled to take the rents, or would she be entitled to the interest as provided by the statute from the filing of the bill till the determination of the suit? After that, she certainly is not entitled to anything but the annual interest on one-third of the value of the land at the time of the alienation. And we see no reason why the same rule does not apply before as after the determination of the suit. The statute does not give her any election to take rents or interest before the determination of the suit. The statute fixes the measure of her compensation, and it relates as well to that which accrues before, as to that which accrues after suit brought. The statute prescribes a rule for the admeasurement of the rights of a widow in such a case, different from, and in the stead of, the one at common law. And I think the widow is entitled to the compensation given by statute from the death of the husband. This view is in harmony with the rule adopted in the cases cited from 35th and 37th Alabama Reports, and with the principle which favors dowers; and is in accord with the language of the statute.

We do not think this view conflicts with the following decisions of this court :—*Frowner and Wife v. Raney,* 9 Ala. 901 ; *Beavers et al. v. Smith,* 11 ib. 20 ; *Johnson v. Elliott,* 12 ib. 114; *Portier et al. v. Barclay et al.,* 15 ib. 430 ; *Fry v. Mer. Ins. Co.,* ib. 810 ; *Springles' Heirs, &c. v. Shields et al.,* ib. 295. These cases were all decided before the adoption of the Code, and the cases cited from 11th and 17th Alabama Reports, we conceive to be in accord with the views expressed.

In the case of *Francis v. Garrard,* which was a case similar to this, it is said that the widow is "entitled, by way of damages, to one-third the rents of the premises, to be estimated without considering the improvements made by the alienee from the time the bill was filed, which will be decreed her as an ordinary monied demand."

Now, suppose the land at the time of alienation was unimproved and not yielding rent, but at the death of the husband, was highly improved by the alienee, and but for such improvement, would still be unyielding rent, how could she be entitled to any damages between the filing of the bill and the termination of the suit ?, Yet if the land had been worth at the time of alienation one hundred thousand dollars, the statute would, in our opinion, give her a right to one-third of the interest on one-third of the value. The case last cited was decided prior to the adoption of the Code. § 1370 of the Code has never been construed with reference to the question under consideration. The cases of *Perine v. Perine,* 35 Ala. 644 ; *Slatter v. Meek and Wife,* ib. 538 ; and *McAllister v. McAllister,* 37 ib. 484, were decided subsequent to the adoption of the Code ; but in those cases, the husband died seized of the land, and a different rule applies to that class of cases than to this, except that the right in both cases vest on the death of the husband, and must be enforced from that time.

The court should have directed the register to take an account of the annual interest on one-third of the value of the land at the time of alienation, from *the death* of the husband to the term of the court to which the report is directed to be made, allowing interest on each year's in-

14

terest, from the end of such year to the term at which the report is required to be made, and add up the same, and a decree should be rendered for the sum ; and a decree should be rendered for the interest accruing each year during the life of the widow, subsequent to the decree, as was done in this case.

4. The statute has fixed this rule, and has allowed no abatements for taxes or anything else, and the court cannot make any allowance therefor.

We desire to administer the law as we find it, not as we would have it. We can see how this statute (§§ 1369, 1370,) may, in some cases, operate very hardly on purchasers, in the present condition of the country, when lands are not worth as much now in a high state of improvement, as they were a few years ago in a wild state or condition.

But this is a matter for the legislature to consider and remedy, and not for the courts.

For the error pointed out, this cause must be reversed and remanded.