Mr. Justice Montgomery
delivered the opinion of the Court:
On the 19th day of December last, this cause was submitted to the court below on pleadings and proofs; two decrees were made, the first dismissing the bill as to the defendant McKenny, and the last adjudging that the “dower interest of the complainant in the property in controversy should be determined according to the value of the property in the year 1875,” and referring it to the Auditor “ to take further proof as to the value of the premises” in 1875, from which last decree the complainant appealed.
The bill was filed on the 20th day of June last. It averred, among other things, that complainant in 'the year 1860 *270 intermarried with one Basil Baden, who in July, 1887, died intestate, and who daring coverture was “seized in fee simple” of a part of lot 9 and all of lot 10, in square 173, in this city; that this property is worth $2,500; that Mr. Baden “made disposition thereof without complainant’s consent,” and that by “mesne conveyances it passed to and is held and owned by defendant Young.”
Complainant prays for “ dower in said real estate,” and if such dower cannot be “ assigned in specie,” then that such “real estate may be sold,” and “a just equivalent in money may be decreed to her in lieu thereof.” Mr. Young, in his answer, declined to admit the death of Mr. Baden, but did admit the ownership and purchase of the property by him as averred in the bill, except that he asserts that he contracted for it in 1878 or 1879, and was afterwards compelled to resort to a bill in equity for specific performance, which he did, obtaining his decree in the year 1880, at which time the property was worth, he alleges, about $300. His answer also avers that he had paid out sums in improvements and taxes on the property, such sum aggregating about $700, and he denies that it is now worth $2,500.
The marriage is proven, as alleged in the bill. It is also proven, and not disputed, that Mr. and Mrs., Baden lived together here as husband and wife from the time they were married until the month of March, 1878, when he left and went to some place unknown to the complainant, and that she has never since heard anything from him.
It also appears from the evidence that Mr. Baden sold the property to one Essex Roberts upon contract in 1875, and that Mr. Roberts sold to defendant,. Young, also upon contract, in 1878. Some testimony as to value was also taken and filed prior to the submission of the cause below.
The decree appealed from is treated by all concerned as having established finally the basis upon which complainant’s interest is to be determined, and no question is made, but an appeal lies from such a decree.
Neither is the legal propriety of the joinder of the de *271 fendants questioned, and we, therefore, assume that such joinder was correct. Allen vs. Meloy, 8 Ohio, 463; 2 Scribner on Dower, 158-9; Marshal vs. Anderson, 1 B. & Mon. (Ky.), 198; Barney vs. Frowner, 9 Ala., 901; Boynen vs. Lancaster, 2 P. & H. (Va.), 198.
Mr. Young’s counsel urges first, “that there is no competent evidence of Mr. Badfen’s death, and second, that the complainant if entitled to dower at all in these lands is only “dowable * * * as of the value thereof at the time of alienation” by the husband.
It is true that Mr. Baden’s death is not directly proven, but it is fairly shown, and seems to be undisputed that he left his home and family eleven years ago, and has never been heard of since.
The rule seems well settled that “ after the lapse of seven years without intelligence concerning a person, the presumption of life ceases.” 1 Greenleaf on Evidence, 57; 1 Bishop on Marriage and Divorce, 452; Rice vs. Rice, 10 Ohio St., 996 ; Newman vs. Jenkins, 10 Pick., 515; Bailey vs. Bailey, 36 Mich., 182; Rosenthal vs. Mayhugh, 33 Ohio St., 155; Whiting vs, Nicoll, 46 Ill., 235. We must, therefore, for the purposes of this suit presume the death of Mr. Baden.
Now, should the interest of complainant be determined according to the value of the property at the time of aliention by the husband, or shall she be permitted to profit by its enhanced value, if any, which “ has arisen from extrinsic and general causes.”
. ' When Mr. Baden became seized of these lands his wife’s inchoate right of dower attached, and her title thereto became “ consummate” at his death. 4 Kent’s Com., 67 ; Price vs. Hobbs., 47 Md., 381.
“.The alienation of the husband conferred no title on the alienee as against the wife in respect of her dower.” 1 Scribner on Dower, 603.
The right of dower is a “ strictly legal right.” 1 Story’s Eq. Jurisp., 624.
It is highly favored in equity. Id., 629, 630.
*272 It “was one of the three principal favorites of the common law.” 4 Kent’s Com., 62.
We are unable to see any good reason why the dower of this woman in these lands “ must be regulated by the value thereof at the time of alienation.” On the contrary we are satisfied upon principle that while she cannot be allowed to share in “ the improved value * * * w'hich has arisen from the actual labor and money of the owner,” she should not be denied her dower interest in such part of their improved value, if any, as “ has arisen from extrinsic and general causes,” and this view is, we think, supported by the great weight of authority in this country. 2 Scribner on Dower, 618; 4 Kent’s Com., 68 ; Bowie vs. Berry, 1 Md. Ch. Dec., 452; Mosher vs. Mosher, 15 Me., 371 ; Price vs. Hobbs, 47 Md., 381; Green vs. Tenant, 2 Har. (Del), 336 ; Summers vs. Bab., 13 Ill., 483 ; Thomson vs. Morrow, 5 Serg. and Rawle, 289 ; 1 Washb. on Real Property, 289 (239); Powell vs. Morrison, 3 Mason R., 347 ; Dunseth vs. Bank, 6 Ohio, 77 ; Allen vs. McCoy, 8 Ohio, 463.
We have not overlooked the authorities which assert the true rule to be that “ the widow must take her dower according to the value of the land at the time of the alienation,” and among them, are Tod vs. Baylor, 4 Leigh., 498; Hobbs vs. Harvey, 16 Me., 80; Rankin vs. Oliphant, 9 Mo., 239; Barine vs. Freeman, 9 Ala., 901; Wilson vs. Oatman, 2 Blackf., 223 ; Van Gelder vs. Post, 2 Edw. Ch., 577; Catlin vs. Ware, 9 Mass., 218 ; Shaw vs. White, 13 John. R. 179 ; Walker vs. Schuyler, 10 Wend., 486 ; Hale vs. James, 6 John. Ch., 258; Dorchester vs. Coventry, 11 John., 510.
The New York cases, however, rest upon a statute enacted in 1806,'which declares that “ dower of any lands sold by the husband shall be according to the value of the lands, exclusive of the improvements made since the sale. 2 Scribner on Dower, 614; Walker vs. Schuyler, 10 Wend., 483; Dorchester vs. Coventry, 11 John., 510; Allen vs. McCoy, 8 Ohio, 463.
*273 And in Dorchester vs. Coventry the court declares that it could not be “presumed that the legislature intended to make a distinction between the improvements and the increased value of the land.”
In support of his position upon this question counsel for Mr. Young cites three of the cases above referred to, viz: Tod vs. Baylor, Hale vs. James, and Dorchester vs. Coventry.
In the first it appears that the husband aliened in 1801, and died twenty-three years later. Meanwhile the purchaser had expended $1,270 in permanent improvements. In 1827 the widow exhibited her bill, praying dower in the land so aliened. The chancellor decreed that “ do'wer be allotted according to the present value of the lands with all its improvements.”
The Court of Appeals reversed the decree, declaring that “when the husband alienes during coverture the widow-shall not be entitled to dower according to the improved value of the land, but must take her dower according to the value at the time of alienation.”
In Hale vs. James, the ’husband of complainant mortgaged the land in dispute to the defendant in 1814, and some years afterwards conveyed to defendant his equity of redemption. He died in 1821, and a few months later his widow filed her bill asking for dower.
When mortgaged, the lands, “exclusive of subsequent improvements,” were worth $9,600; when conveyed, $7,333, and at the husband’s death, $6,166, it was held that the date of the deed was to be “deemed to be the period of alienation, at which the valuation was to be taken,” and that such value should be “estimated without regard to the subsequent improvements made by the purchaser.”
In Dorchester vs. Coventry, the husband conveyed in 1804 and died in 1813 — when conveyed, the land was worth $500.
On the trial of the cause brought by the widow to recover dower, it appeared that the value of the land was then $1,750 • “ exclusive of buildings erected since the alienation.”
*274 It was held that the widow was entitled to “have judgment according to the value of the land at the time of the alienation.” The court says that the statute (of 1806 above referred to) “ cannot admit of any other reasonable interpretation.” And then follows the language above quoted.
In most, if not all, of the cases outside of New York, and in many, or most of the New York cases, the question passed upon was not whether the widow should or should not have the benefit of the increased value “ which had arisen from extrinsic or general causes,” but it was whether or not the increased value which had arisen from .the actual labor and money of the ailenee should be shared by her in accordance with what seems to be the rule established in England. 2 Scribner on Dower, 604.
Very few, if any, authorities can be found in this country in conflict with the doctrine declared by Judge Story in Powell vs. Morrison, that the widow whose husband has, without her consent, aliened land of which he was seized, and in which she had an inchoate right of dower, was entitled to such interest “ as would be equal in value to one just third part” of “the present value, * * * exclusive of the increased value occasioned by the building and improvements on the premises since the alienation thereof by the husband,”- and such we regard as the settled law of the land, in the absence of statutory provision.
We think that in this case the complainant is entitled to a decree directing that the value of her “ dower interest * * * in the property in controversy is to be determined according to the value of such property at the present time, less the amount, if anything, which has arisen from the actual labor and money of the owner.” It should be ascertained what sum this property would now be fairly worth if the expenditures and improvements alleged to have been made by Mr. Young since he purchased, had not been made.
The cause will be remanded to the court below for further action in conformity with this opinion.