## ABE BLOCK & CO. v. LARGENT.

(Court of Civil Appeals of Texas. March 23, 1911.)

1. COMPOSITIONS WITH CREDITORS (§ 2*)— DEFINITION.

A "composition with creditors" has been defined to be an agreement made by a debtor, either insolvent or in embarrassed circumstances, with two or more of his creditors, by which it is agreed, on the one side, that each of the creditors who enters into the agreement shall be paid a specified amount or percentage, in either case less than the whole, of their respective claims, or that all of a specified portion of the debtor's property shall be applied toward the payment of those claims pro rata, while, on the other side, the creditors agree to accept in satisfaction of their claims whatever is thus proffered.

[Ed. Note.—For other cases, see Compositions with Creditors, Cent. Dig. § 1; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 2, pp. 1370, 1371.]

2. COMPOSITIONS WITH CREDITORS (§ 27*)— EVIDENCE.

In an action by a creditor to recover of defendant the difference between the amount of his indebtedness to plaintiff and the sum they realized as their pro rata part of the proceeds of a sale of goods, where the defendant claimed a composition with creditors, evidence *held* sufficient to support the finding that there was such composition.

[Ed. Note.—For other cases, see Compositions with Creditors, Dec. Dig. § 27.*]

---

**3. WORDS AND PHRASES—"SETTLE."**

The word "settle" is defined by Webster to mean "to liquidate; to balance; to close up." [Ed. Note.—For other definitions, see Words and Phrases, vol. 8, pp. 6446-6450.]

**4. COMPOSITIONS WITH CREDITORS (§ 27*)—EVIDENCE.**

In an action by a creditor for the difference between the amount of defendant's debt and a sum realized as a pro rata share of the proceeds of sale of goods, where the evidence showed there was a composition with creditors and a small balance, but not how much, undistributed, where the court could not determine from the evidence how much of plaintiff's claim would remain unsatisfied after the final distribution had been made, the court could not render a judgment in plaintiff's favor for any more than the balance unpaid of their claim, after it had been credited with the pro rata part in full, which they were entitled to receive of the proceeds of the sale, and it devolved upon plaintiffs to show what that balance was, and where they failed to do so they are not entitled to recover.

[Ed. Note.—For other cases, see Compositions with Creditors, Dec. Dig. § 27.*]

Error from District Court, Wise County; J. W. Patterson, Judge.

Action by Abe Block & Company against V. S. Largent. From a judgment for defendant, plaintiff brings error. Affirmed.

See, also, 127 S. W. 1076.

Geo. Q. McGown and Marvin H. Brown, for plaintiff in error. F. W. Roberts and Stanley & Stanley, for defendant in error.

WILSON, C. J. Appellee was a retail dealer in general merchandise at Crafton, in Wise county. He was insolvent. His indebtedness was to appellant and various other persons and firms, and amounted to about the sum of $22,000. Pressed by them for payment of their claims, he called a meeting of his creditors, at which he stated to them his financial condition. The only property he owned subject to execution was his stock of merchandise. As a result of the meeting of his creditors, they, including appellant, on December 3, 1906, entered into an agreement among themselves as follows: "We, the undersigned creditors of V. S. Largent at Crafton, Wise county, Texas, agree that we, the creditors, select a committee of three who shall have power to receive the assets of said Largent which he now proposes to transfer to his said creditors, said creditors to appoint a trustee who shall give bond in such sum as the committee may deem advisable, payable to the committee, said trustee to at once take charge of said assets of the said Largent, taking invoice of and report to the committee and the creditors his findings, and to advertise said assets for sale at the earliest date consistent, after notifying all creditors of the date of said sale." On the same day appellee executed and delivered to a committee named by his creditors a transfer as follows: "I, V. S. Largent, of Crafton, Wise county, Texas, for and in consideration of ($1.00) one dollar to me in hand paid, hereby sell, transfer and assign to Geo. Q. McGown, J. P. Hanna and R. L. Morris, a committee appointed by my creditors for the purpose of receiving the same, all my property subject to execution for the purpose of converting into cash at the earliest possible time consistent and prorated among my creditors." The creditors took charge of the goods, and, after making an inventory thereof showing the stock to be worth $8,500, on April 1, 1907, sold same for the sum of $6,012, which, except a small portion thereof, they distributed among themselves. The portion of the proceeds of the sale not then distributed seems to have remained undistributed at the date of the trial resulting in the judgment from which this appeal is prosecuted. The delay in the sale of the goods from December, 1906, to April, 1907, was due to a suit brought by one of the creditors against the others. That suit was compromised, and, in accordance with the terms of the compromise, the creditor who commenced it was paid out of the proceeds of the sale of the goods a sum in excess of his pro rata part thereof. This suit was by appellants to recover of appellee the difference between the amount of his indebtedness to them and the sum they realized as their pro rata part of the proceeds of the sale of the goods. The trial was before the court without a jury, and resulted in a judgment in favor of appellee.

Assignments challenging as incorrect the conclusion reached by the trial court that the transaction between appellee and his creditors in law amounted to a composition by the former with the latter present the only question we will discuss in disposing of the appeal.

[1] A "composition with creditors" has been defined to be "an agreement made by a debtor, either insolvent or in embarrassed circumstances, with two or more of his creditors, by which it is agreed, on the one side, that each of the creditors who enters into the agreement shall be paid a specified amount or percentage (in either case less than the whole) of their respective claims, or that all of a specified portion of the debtor's property shall be applied toward the payment of those claims pro rata, while, on the other side, the creditors agree to accept in satisfaction of their claims whatever is thus proffered." 8 Cyc. 412. If the testimony was sufficient to support a finding that the creditors agreed to accept the stock of goods in satisfaction of their claims, the conclusion of the court that the transaction was a composition cannot be said to have been erroneous, for the testimony clearly established the existence of the other elements of a composition with creditors. [2] The testimony relied upon to show such an agreement on the part of the creditors was disputed and

not as satisfactory as it might have been; but we cannot say it was not sufficient to support the conclusion reached by the court. With reference to what occurred at the meeting of the creditors, the witness Stanley, who was present as appellee's attorney, testified: "We made a statement of Mr. Largent's condition at that time, and we wanted the creditors to get as large a per cent. of the accounts as possible, and I submitted it to them without any advice in the matter. The suggestion was made that the bankruptcy proceedings be made the second issue, and that was not exactly what we wanted. That matter was talked over, and we talked about what would pay the creditors more on their accounts, and the final result was that they offered to take and we offered to give a bill of sale, transferring all of Mr. Largent's assets, all that we could give them that were not exempt to him under the statute. * * * So they finally said if we would make a bill of sale they would settle that way. * * * There was nothing said by them to Largent about him paying any more, and there was nothing said by Largent about paying any more." There was testimony, though disputed, that the stock of goods appellee transferred to his creditors was worth from $18,000 to $25,000, and there was testimony tending to show that the inventory taken of the stock by the creditors was a false one, in that it did not include all the goods, nor correctly state the value of some of the goods it did include. Appellee testified: "I made this deal because I was expecting it to square my indebtedness with the people I was dealing with. I considered that I was trying to do what was right. I thought I paid that, and nothing else. They never said anything to me about paying any more on the goods. There never has been nothing said to me from that day until this suit was filed. They never have told me that they sold the goods, or what they got for them. They never reported to me. I turned over besides the goods a lot of accounts. I do not remember how much the accounts were. I had some book accounts. I did not have any notes. There was something in the neighborhood of $500 or $1,000 owing on the book. I have not collected this since. I have not had anything to do with it since I turned it over to them. No other demand was made on me after I made this bill of sale. * * * The goods remained unsold in possession of the committee from December to April. The store was kept closed during that time. The effect that would have on the value of the goods would depend on how old the goods was. They were most all winter goods. * * * They said they wanted the goods, and I turned them over to them. * * * In settlement with them they were to just take what I had for the debts."

The court had a right to believe the witnesses from whose testimony we have quoted, and to disbelieve witnesses who testified to the contrary. It may be that the testimony of appellee that his creditors were to take what he had for the debts was merely a conclusion reached by him and should not be given weight; but the testimony of the witness Stanley that the creditors, after considering the matter, "finally said if we would make a bill of sale they would settle that way" is of a different character. [3] The word "settle" is defined by Webster to mean "to liquidate; to balance; to close up." We think the trial court had a right to construe the proposition of the creditors to be one to take a transfer of the property owned by appellee as a payment in full of their claims.

[4] The record discloses another reason why appellant should have been denied a recovery as sought by it. The witness McGown, who was a member of the committee to whom, on behalf of the creditors, appellee conveyed his property subject to execution, testifying in their behalf, with reference to the proceeds of the sale made of the goods, said: "There is a small balance that has not been distributed at the request of some of the large creditors. There was part left that was to be paid to Lee Morris. We paid him 20 cents, and left a balance that has not been paid them." If, as seems to be the case from the language used by the witness, there was a portion of the proceeds of the sale of the goods then undistributed in the hands of the committee, in the distribution of which appellant was entitled to share, the court could not have determined from the evidence before him how much of appellant's claim would remain unsatisfied after the final distribution had been made, for the testimony did not show the amount of such undistributed proceeds, further than as stated by said witness that it was a "small balance." As the court, in any event, would not have been authorized to render a judgment in appellant's favor for any more than the balance unpaid of their claim after it had been credited with the pro rata part in full they were entitled to demand and receive of the proceeds of the sale of the goods, it devolved upon appellant to show what that balance would be. Failing to show it, they were not entitled to recover.

The judgment is affirmed.