## In re CLARENCE A. NACHMAN CO., Inc.

(Circuit Court of Appeals, Second Circuit. March 2, 1925.)

### No. 142.

1. **Compositions with creditors ⚖=2—Voluntary composition before bankruptcy held composition at common law, and not in bankruptcy.**

Voluntary composition before bankruptcy, whereby creditors agreed to accept 30 per cent. of their claims in full satisfaction, was composition at common law, and not in bankruptcy.

2. **Compositions with creditors ⚖=2—"Composition at common law" defined.**

At common law, a composition agreement is one between embarrassed or insolvent debtor and two or more creditors, that each creditor entering into agreement shall be paid specified amount less than the whole of claim in full satisfaction, working an inchoate novation of original claim. It is substantially an accord, for which consideration is satisfaction to be made by debtor, and such accord is no bar to suit on original debt, unless performed.

3. **Accord and satisfaction ⚖=16—Accord, not followed by performance, does not bar action on original obligation, unless promise itself is accepted as satisfaction.**

Generally, mere accord, not followed by performance, is no bar to action on original obligation, unless promise, and not performance thereof, is accepted in satisfaction of demand.

4. **Compositions with creditors ⚖=24—Breach of executory composition revives original claim.**

Breach of executory composition avoids it, and revives original claim, and creditor may sue for original debt, or unpaid balance over amount received under composition.

5. **Bankruptcy ⚖=375—Composition agreement, to be within Bankruptcy Act, must have been entered after petition was filed, or after adjudication.**

Composition agreement, to be within Bankruptcy Act, must have been entered into by one against whom voluntary or involuntary petition has been filed, and who has been adjudged bankrupt.

6. **Accord and satisfaction ⚖=9—Agreement to accept note indorsed by third party for less than amount of debt in full discharge thereof is valid, but agreement to accept debtor's own unindorsed note is mere nudum pactum.**

Creditors' agreement to accept debtor's note indorsed by third party for part of debt as valid discharge of whole debt is valid, but agreement to accept debtor's own unindorsed note is mere nudum pactum.

7. **Compositions with creditors ⚖=24—Delivery of debtor's unindorsed note did not comply with composition agreement, calling for delivery of note indorsed by third party.**

Delivery of debtor's unindorsed note to creditors' attorney did not comply with composition agreement, whereby creditors agreed

to accept 30 per cent. of debt in full discharge, 10 per cent. to be by note indorsed by third party, especially where note was not paid at maturity; that creditors' attorney retained note until maturity, to see if it would be paid, being immaterial.

**8. Compositions with creditors ☞24—Debtor, failing to comply with composition agreement, cannot set up agreement as defense.**

Debtor, failing to comply with composition agreement, cannot set up such agreement as defense.

**9. Compositions with creditors ☞21—Common-law rule as to operation and effect of composition agreement stated.**

If promise of creditor to release debtor under composition be for new consideration, to be performed at future day certain, original right of action is suspended, and, if promise be then duly performed, right is destroyed; but, if not, promisee may sue on original cause of action, or on new promise, unless new promise itself constitutes satisfaction.

**10. Bankruptcy ☞387—Failure to pay notes given under composition agreement under Bankruptcy Act does not revive original debts.**

Failure to pay notes given under composition agreement under Bankruptcy Act (Comp. St. § 9585–9656) does not revive original debts.

Petition to Revise Order of and Appeal from the District Court of the United States for the Western District of New York.

In the matter of the Clarence A. Nachman Company, Incorporated, bankrupt. On appeal and petition of Alvine Silver Company and others, creditors, to revise an order of the District Court affirming an order of a referee, reducing creditors' claims. Reversed, with directions.

Issac Adler, of Rochester, N. Y., for petitioners and appellants.

Walter A. Swan, of Rochester, N. Y., for trustee respondent.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

ROGERS, Circuit Judge. This case is here on appeal, and also on a petition to revise. The referee in bankruptcy made an order on February 18, 1924, reducing the claims of certain creditors, and that order was affirmed by the District Judge on July 7, 1924. It is sought to review that order by the petitions to revise. And certain other creditors, whose claims were also reduced by the same order of the referee, which action was affirmed by the District Judge in the order of July 7, 1924, heretofore mentioned, did not join in the petition to revise, but took an appeal to this court from the order. The same attorney represented both the petitioners and the appellants.

The attorneys on both sides entered into a stipulation that the petition to revise and the appeal should, subject to the approval of this court, be heard together, and they further stipulated "all the facts essential to the decision of the questions presented by either the appeal or petition to revise," and that they should be printed in the one record. It further appears that the appeal was taken in behalf of creditors whose claims of $500 or over were rejected. The petition to revise was filed in behalf of creditors whose claims were under $500.

One of the judges of this court, on August 8, 1924, signed an order directing that the appeal and petition to revise be consolidated into one proceeding and that they be heard upon one record. The essential facts are as follows:

The bankrupt is a corporation created under the laws of the state of New York, and having its principal office and place of business at the city of Rochester, in said state. On December 19, 1921, it was insolvent. Its liabilities were approximately $65,000 more than its assets. On the above date a meeting of its creditors was held in the city of New York, and a committee of creditors was appointed. This committee, on December 19, 1921, addressed a letter to all creditors of the company, except those in Rochester. That letter read as follows:

"To Creditors: At the request of certain of the creditors of the above named, we called a meeting of the creditors at the rooms of the National Jewelers' Board of Trade, 15 Maiden Lane, New York City, on Saturday, December 17, 1921. At this meeting a majority of the creditors attended. The liabilities are approximately $90,000, and the assets are about $25,000. The creditors present at this meeting unanimously agreed that insolvency proceedings would not be for the best interests of creditors, and therefore recommended the acceptance of a proposition of settlement as follows: 20 per cent. in cash on or before January 4, 1922. 10 per cent. by note payable June 1, 1922, said note to be indorsed by Adolph Nachman.

"It is believed that creditors could not hope to realize anywhere near 30 per cent. in insolvency proceedings. If insolvency proceedings are to be avoided in this 'matter, it is most urgent that you sign and return to us the inclosed consent without delay.

"Very truly yours,

"Greenbaum, Wolff & Ernst."

And there was also sent the following:

"Re Clarence A. Nachman Company, Inc., Rochester, N. Y. In consideration of the sum of one dollar in hand paid to us, the receipt whereof 'is hereby acknowledged, we, the undersigned, a creditor of Clarence A. Nachman Company, Inc., of Rochester, New York, in the amount set opposite our name, do agree to accept in full settlement of all claims against the said Clarence A. Nachman Company, Inc., a sum equal to 30 per cent. of our claim, payable as follows: 20 per cent. in cash on or before January 4, 1922. 10 per cent. by a note payable June 1, 1922, said note to be indorsed by Adolph Nachman. Upon receipt of the aforesaid 30 per cent., we do hereby release the said Clarence A. Nachman Company, Inc., from all demands and claims which we now have against it of whatsoever kind and nature.

"Name.                                    Amount.

    "Sign here.

"Please sign and return at once, together with an itemized statement of account, and also with any notes to Messrs. Greenbaum, Wolff & Ernst, attorneys for creditors, 7 Dey street, New York City."

The above composition agreement was signed by all the creditors who have joined in this petition to revise or in the appeal. It was not signed by a considerable number of the other creditors. The claims of those who signed aggregated $35,558.90.

After this agreement was signed 20 per cent. in cash was sent to Greenbaum, Wolff & Ernst, the attorneys representing the creditors who had accepted, together with a note, signed by Clarence A. Nachman Company, Inc., covering 10 per cent. of the indebtedness due to the said creditors, payable June 1, 1922, which note, however, was not indorsed by Adolph Nachman. He was the brother of Clarence A. Nachman, the president and treasurer of the Clarence A. Nachman Company, Inc., and the said Adolph was not in any way interested in the business of that company and had no connection with its business. It is to be observed that the agreement which the creditors signed, and in which they agreed to release the company, was conditioned on their receiving 20 per cent. in cash, and a note for 10 per cent., "said note to be indorsed by Adolph Nachman." All the creditors whose claims were reduced received 20 per cent. of their original claim. But the unindorsed note, representing the 10 per cent. of the settlement, was sent to Greenbaum & Wolff, the attorneys, and was by them retained. It was, however, not paid at maturity, and no pay-

ment has ever been made thereon, although it was "payable on or before June 1, 1922."

On June 7, 1922, a petition in bankruptcy against Clarence A. Nachman Company, Inc., was filed in the District Court, and in pursuance thereof the company was adjudicated a bankrupt. And at the first meeting of creditors, which was held on June 23, 1922, all of the petitioners and appellants filed their respective claims for the original amounts due them from the bankrupt, less the 20 per cent. paid. Objections were made to the allowance of their claims, upon the ground that their original claims were released, and that they were entitled to prove only for the amount unpaid represented by the note for 10 per cent. hereinbefore set forth. These objections were sustained by the referee, who entered an order reducing their claims to an amount representing 10 per cent. of their original claims. And this order the District Judge affirmed.

[1] The validity of the order made by the District Judge depends upon the legal effect of the composition agreement which these creditors signed, and by which they agreed: "Upon receipt of the aforesaid 30 per cent. we do hereby release the said Clarence A. Nachman Company, Inc., from all demands and claims which we now have against it of whatsoever kind and nature." That 30 per cent. was to be made up by the payment in cash of 20 per cent. on or before the stipulated date, and which it is admitted was paid to them on or before that date. The remaining 10 per cent. was to be "by a note payable June 1, 1922, said note to be indorsed by Adolph Nachman." No such note was ever given them. Instead, as we have seen, a note made by the company and unindorsed by Adolph Nachman was forwarded to their attorneys and held by them, and has never been paid. Have the creditors received their "30 per cent." under their agreement that, "upon receipt of the aforesaid 30 per cent.," we do hereby release the company? The appellants and petitioners contend that they have only received 20 per cent., and that they have not received the remaining 10 per cent., and so are entitled to claim the full amount of their original claim, less only the 20 per cent. They urge upon the court that the settlement upon which they agreed was not made in any bankruptcy or insolvency proceeding, but was made before bankruptcy, and for the very purpose of avoiding it.

[2] In our opinion this is to be regarded as a settlement at common law; and a very important distinction exists between a composition at common law and a composition

in bankruptcy. A composition agreement at the common law is an agreement made between an embarrassed or insolvent debtor and two or more of his creditors, that each of the creditors entering into the agreement shall be paid a specified amount, less than the whole of their claims, and the creditors agree to accept such payment in full satisfaction of their claims. The agreement works an inchoate novation of the original claim. Good v. Cheesman, 2 B. & Ad. 328; Baxter v. Bell, 86 N. Y. 195; Brown v. Farnham, 48 Minn. 317, 51 N. W. 377. It is substantially an accord for which the consideration is the satisfaction to be made by the debtor, and such an accord is no bar to suit on the original debt, unless the satisfaction is performed.

[3] In the case of an accord it is true that a mere accord, which is not followed by performance, is as a general rule no bar to an action on the original obligation. But this presupposes that the agreement of the creditor is to accept the performance of the debtor's promise, and not the agreement itself. But there are two classes of such agreements; and it is settled beyond doubt that if the promise itself, and not the performance thereof, is accepted in satisfaction of the demand, and there is a sufficient consideration, the demand is extinguished, and cannot be the foundation of an action. In such cases there is a valid accord and satisfaction, even though the promise is not performed. Very v. Levy, 13 How. 345, 14 L. Ed. 173; Bandman v. Finn, 185 N. Y. 508, 78 N. E. 175, 12 L. R. A. (N. S.) 1134; Field v. Aldrich, 162 Mass. 587, 39 N. E. 288; Laughead v. Frick Coke Co., 209 Pa. 368, 58 A. 685, 103 Am. St. Rep. 1014; Henderson v. McRae, 148 Mich. 324, 111 N. W. 1057; Beach v. Whittlesey, 73 Conn. 530, 48 A. 350; 1 C. J. 567.

[4] A breach of an executory composition avoids it and revives the original claim. The creditor may then sue for the whole of his debt or the balance over what he has already received under the composition. In re Hatton, L. R. 7 Ch. 723; Clarke v. White, 12 Pet. 178, 9 L. Ed. 1046; Matter of Mirkus (C. C. A.) 289 F. 732, 31 A. L. R. 435; A. B. Carton & Co. (D. C.) 148 F. 63; Ransom v. Geer (C. C.) 12 F. 607; Jacobs v. Fensterstock, 236 N. Y. 39, 139 N. E. 772; Zoebisch v. Von Ninden, 120 N. Y. 406, 24 N. E. 795; National Mt. Wollaston Bank v. Porter, 122 Mass. 308.

[5] To bring a composition within the provisions of the Bankruptcy Act, it must have been entered into by one against whom a voluntary or involuntary petition has been filed or who has been adjudged a bankrupt. Collier on Bankruptcy (13th Ed.) vol. 1, p. 437. And in Remington on Bankruptcy (3d Ed.) vol. 7, p. 113, § 3068, after stating that debtors endeavor to make compositions out of court before the filing of any bankruptcy petition, it is said that "one of the collateral benefits of the Bankruptcy Law is that it enables debtors and creditors to adjust their mutual affairs amicably, without any court proceedings." But as the validity of the agreement is not assailed on the ground that it is contrary to the Bankruptcy Act (Comp. St. §§ 9585–9656), we shall not discuss that phase of the matter; and the matter herein involved must be disposed of according to the principles which govern common law compositions. But a composition agreement does not discharge the creditor's debt. It is only discharged when the terms of the composition are carried out, Ransom v. Geer (C. C.) 12 F. 607, 608.

[6, 7] The delivery of the unindorsed note of the debtor was not a compliance with the composition agreement, which called for a note indorsed by a third party. If a creditor agrees to accept by way of further security for his debt the note of his debtor for a part of the debt, the note being indorsed by a third party, and so accepts it as a valid discharge of the debt, the agreement is valid. But the agreement to accept the debtor's own note, unindorsed, is a mere nudum pactum. Booth v. Smith, 3 Wend. (N. Y.) 67; Boyd v. Hitchcock, 20 Johns. (N. Y.) 76, 11 Am. Dec. 247; Conkling v. King, 10 Barb. (N. Y.) 372, 375. Moreover, the note to be given was one payable on June 1, 1922, and it was not paid on that date, and never has been paid. It is plain that the defendant did not comply with the terms of its composition agreement. We shall see as we proceed that, if the company had delivered its note, indorsed by Adolph Nachman, and the note was not paid when it was due, the failure to pay it would have reopened the whole matter and revived the debt; and, if that be true, the fact that the attorneys retained the unindorsed note of the company, and held it to see if it would be paid when due, cannot have any different effect.

[8] Unless the defendant has complied with the terms of its composition agreement, it cannot set that agreement up as a defense. In Hadley Falls National Bank v. May, 29 Hun (N. Y.) 404, the agreement was to accept the sum of 25 per cent. on the dollar in satisfaction of its demands. This, said the court, was not an agreement to accept the promise of the debtor to pay that amount in

satisfaction, but the actual payment of that percentage by the debtor was requisite to satisfy the debt. This was affirmed in 99 N. Y. 671.

[9] The common-law rule on this subject is correctly stated in Beck v. Witteman Bros., 185 App. Div. 643, 645, 173 N. Y. S. 488, 489, where it is said: "At common law an agreement between a debtor and more than one creditor, by which the creditors agree to discharge their claims in consideration of a partial payment, is valid, and upon performance the debtor is discharged. The rule is that, if the promise to release be for a new consideration to be performed at a future day certain, then the original right of action is suspended until that day comes. If the promise is then duly performed, the right is destroyed; but, if the promise is not then duly performed, the right revives, and the promisee has his election to sue on the original cause of action or on the new promise, unless, by the terms or the legal effect of the new contract, the new promise is itself a satisfaction and an extinction of the old one. * * * We do not understand that it is disputed that such is the common law."

[10] It may be admitted that the failure to pay notes given under a composition agreement under the Bankruptcy Act does not revive the original debts. This court so held in In re Mirkus, 289 F. 732, 31 A. L. R. 435. But a composition agreement at common law is quite another matter. Such an agreement was before the court in In re A. B. Carton & Co., 148 F. 63. In that case, which was in the District Court for the Southern District of New York, the creditors agreed to accept 40 per cent. of their claims in full satisfaction, one-half to be paid in cash and the remainder to be evidenced by the notes of the debtor. The court held that this did not operate as an accord and satisfaction until full payment was made, and that the failure to pay the notes which were so given revived the original debt. The court said:

"The presumption of law with respect to any voluntary composition agreement is that it is only discharged 'when the terms of the composition are carried out,' which includes payment, and not a mere issuance of paper. Ransom v. Geer (C. C.) 12 F. 607, with approval. Considering that the agreement of 1904 was not done under the sanction of the Bankruptcy Act, it must be regarded as a New York contract, and, unless the explicit language of the agreement requires a contrary construction, it is clear that in this state a failure to carry out to the letter a

composition agreement revives the original debt. Dale v. Fowler, 12 How. Prac. (N. Y.) 462. It is to be remembered that the notes given in 1904 by these bankrupts were their own notes unindorsed, and their issuance and receipt, followed by their nonpayment, have been well described upon the argument as an accord without a satisfaction. Nonpayment of such notes clearly revives the original debt."

And that such is understood to be the common-law rule in New York appears from the decision in Jacobs v. Fensterstock, 236 N. Y. 39, 42, 139 N. E. 772, 773, where, in an opinion written by Chief Judge Hiscock and unanimously concurred in, it was declared that while, in a composition agreement under the Bankruptcy Act, the failure to pay notes given as provided in the composition agreement did not revive the debt the rule would be otherwise "in an ordinary settlement or common-law composition."

The order of the District Court is reversed, with the direction to allow the claims of the petitioners and appellants for the full amount as proven.