### KIRBY v. AMERICAN STATE BANK OF AMARILLO. (No. 1188—5188.)

Commission of Appeals of Texas, Section B. June 28, 1929.

Bailey & Bailey, of Dallas, for plaintiff in error.

Touchstone, Wight, Gormley & Price, of Dallas, for defendant in error.

LEDDY, J. Plaintiff in error seeks by this appeal to obtain relief from a judgment awarded against him as indorser upon certain notes sued upon by defendant in error. Plaintiff in error pleaded as a defense against his liability as such indorser that the notes sued upon were extended by defendant in error for a valuable consideration without his knowledge or consent and without expressly reserving any right of recourse against him.

The basis for this plea exists in a letter written by defendant in error bank to S. W. Sibley, who was the agent of O. S. Carlton, the maker of the notes involved. The letter reads as follows:

"Amarillo, Texas, September 27, 1926.

"Mr. S. W. Sibley, Dallas, Texas. Dear Mr. Sibley: We have your wire under this date which reads as follows: 'Instruct North Texas National Bank by wire not to place Carlton notes in hands of Attorney. Arrangements being made to pay.'

"We are complying with your request and wiring North Texas to-day to delay placing these notes in the hands of an attorney until Wednesday noon, but will instruct them by letter to-day, if not paid by that date, to place in hands of an attorney and have suit filed.

"We trust that these notes will be taken care of by Wednesday noon, so that it will not be necessary to have them placed in the hands of an attorney.

"We have been out the expense of three telegrams on these items which we feel should be paid for our account at North Texas at the time of payment of notes.

"Yours very truly,
"[Signed] J. H. Paul, President."

We are of the opinion it conclusively appears that there was no valid consideration for the extension pleaded. Where an extension for a definite period is agreed to by the parties, the effect is to consummate a contract obligating the creditor to forbear suit during the time of the extension, and binding the debtor to forbear his right to pay the debt before the expiration of the extension period. This principle is clearly enunciated by Chief Justice Gaines, in Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128, wherein he states: "The latter secures the benefit of the forbearance; the former secures an interest-bearing investment for a definite period of time. One gives up his right to sue for a period in consideration of a promise to pay interest during the whole of the time; the other relinquishes his right to pay during the same period, in consideration of the promise of forbearance."

The maker of the note was not obligated to forego payment until Wednesday noon, but was expressly permitted under the terms of the agreement to pay at any time up until that time. He could have paid off the same immediately upon receipt of the letter, as he was not required or bound under the bank's proposition to withhold payment for any definite period of time.

In Benson v. Phipps, cited above, Chief Justice Gaines distinguishes cases which seemingly support a contrary doctrine to that announced by the court as being cases where the facts were identical with those of the case before us. He says: "In many cases which seemingly support the contrary doctrine, there was a mere promise by the creditor to forbear, without any corresponding promise on part of the debtor not to pay during the time of the promised forbearance. In such cases, it is clear that there is no consideration for the promise."

Real Estate & Abstract Co. v. Bahn, 87 Tex. 582, 29 S. W. 646, 30 S. W. 430, presented a case in which the purported extension was supported by an agreement absolutely identical with that claimed in this case, as appears from the agreement quoted by Chief Justice Gaines, the same being as follows: "That a few days after the note sued on became due, and just before it was assigned to the plaintiff, N. E. Fain presented same to the defendant for payment, when said Stacy, as president of defendant company, requested that an extension of one week from that date be given on said note, and that the same be not placed in the hands of attorney for collection until one week; and agreed, if this was done, that he would pay the note within that time," etc.

In commenting on the insufficiency of this agreement to constitute a valid extension, the Chief Justice said: "Here the creditor agrees to extend for one week, and the debtor agrees to pay within the week. He does not agree that he will not pay until the end of the week, or that in case he does pay, he will pay interest for the entire period of the extension. Hence there was no consideration for the promise of the creditor."

Here the debtor requests that the creditor forbear putting the notes in the hands of an

attorney before the following Wednesday. In response to this request, the creditor expressly agrees that the debtor may pay *at any time* not later than Wednesday noon, as it is stated that it is instructing the collecting bank "if not paid *by that time* to place in the hands of an attorney," etc., and this statement is followed with the further language: "We trust that these notes will be taken care of *by Wednesday noon.*" It is clear from this language that the maker of the note was not obligated to pay interest for any definite time. He was privileged to pay the note under the agreement without incurring any obligation whatever for any additional interest over and above that already owing by him, if he desired to do so.

■ It is insisted that the following language contained in the letter constituted a valuable consideration for the forbearance not to sue until the date specified: "We have been out the expense of three telegrams on these items which we feel should be paid for our account at North Texas [Bank] at the time of payment of the notes." This language cannot be used as a basis for a valuable consideration for the forbearance granted by the letter for two reasons: First, because it appears from the face of the letter that the same is not made a condition of the alleged forbearance. When the letter is read as a whole, it shows conclusively that the request to forbear collection of the notes until Wednesday was granted absolutely, without being conditioned upon the maker of the note paying the cost of the telegrams which the bank had incurred. The writer of the letter, after agreeing to the request to forbear immediate collection of the notes, merely expressed an indication of his feelings to the effect that because of the extension granted the maker should pay the expense he had been out for telegrams in connection with the matter.

The second reason, which prevents plaintiff in error from availing itself of the payment of the telegrams as a consideration for the forbearance granted, is that the record is utterly devoid of any evidence showing that Sibley as agent for the maker of the notes accepted the bank's proposition to pay the cost of these telegrams. The Court of Civil Appeals recites in its opinion that Sibley testified he agreed to such payment, but a careful examination of his testimony discloses that court was in error in stating his testimony upon this point. Nowhere does he state that he agreed to pay the cost of the telegrams the bank had paid, nor is there any evidence whatever that he communicated his acceptance of the request to pay the cost of the telegrams to the defendant in error bank. The only evidence with reference to this matter is that Sibley testified that after receiving the letter he "relied upon it." If Carlton had been sued for the cost of these telegrams, the

evidence presented in this record would disclose a complete lack of liability on his part therefor.

The trial court instructed the jury peremptorily to render a verdict against Kirby and the maker of the note for the amount of the principal and interest due thereon, and then submitted a special issue in regard to attorney's fees. Plaintiff in error had pleaded that the attorney's fees stipulated were unreasonable, and this issue was submitted for the determination of the jury. The jury answered the issue that a reasonable attorney's fee in the case would be $1,565.40, which was 10 per cent. of the principal and interest due on the note.

■ Plaintiff in error contends that the judgment should be reversed, because the form of submission of this case was general, together with special issues, and that such submission is violative of article 2202, Vernon's Ann. Civil Statutes 1925. The case of Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 557, is cited to support the proposition that the form of submission in this case was erroneous. It is held in the case cited that under the statute it is reversible error for the court to submit a general charge in connection with the submission of special issues. The holding in that case follows the settled law in this state that the court must submit a case either by a general charge or upon special issues, and that it cannot combine the submission of both in one charge. We do not think, however, that the procedure followed in this case is violative of the statute or the rule announced by these decisions, for the reason that a peremptory instruction is not a general charge within the meaning of the statute.

This was so determined by our Supreme Court in the case of Walker et al. v. Haley, 110 Tex. 50, 214 S. W. 295. In that case the court had under consideration the act of 1913 (chapter 59) providing that objection to "the charge" of the court shall be made before it is read to the jury, and otherwise shall be considered as waived. It was determined that such statute had no reference to a peremptory instruction, and in passing upon the question Chief Justice Phillips, speaking for the court said: "The 'charge of the court' with which the act deals, is a charge applying the law to the facts of the case for the jury's guidance, a charge for that end, and which for supposed errors may be open to correction. It has no reference to a direction of the verdict, which leaves the jury with no province, and subject, therefore, to no influence from a charge; which is not a 'charge' at all in any true sense, but only the means of giving effect to the sustaining of a demurrer to the evidence; and which, if erroneous at all, is so, not because of any defect in the direction, but because of the court's mistaken view as to the effect of the proof."

Where a case is submitted on special issues, and the court takes the view that the facts are uncontroverted on some of the alleged issues, we see no objection to the court directing the jury peremptorily to find such issues in accordance with the view held by the court, and at the same time submit all issues which it deems controverted for the determination of the jury, or the court may submit to the jury only controverted issues, and, when the motion for judgment is made, may then enter judgment upon the uncontroverted issues in connection with the findings of the jury on the disputed issues.

Our holding necessitates an approval of the conclusion reached by the Court of Civil Appeals; hence we recommend its judgment be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.