## WHITE v. HIX.

### No. 3459.

Court of Civil Appeals of Texas. El Paso.

March 11, 1937.

Rehearing Denied April 1, 1937.

138

Sam McCollum, of Brady, and Carl Runge, of Mason (Turney, Burges, Culwell & Pollard, of El Paso, on the brief), for appellant.

Whitaker & Perkins, of Midland, for appellee.

HIGGINS, Justice (after stating the case as above).

Appellant presents two propositions, the second of which will be first considered. It reads: "Extension agreement whereby note was extended for indefinite time in that debtor was authorized to pay note on or before maturity date, was without consideration and insufficient to toll limitation statutes."

The authorities cited in support thereof are Novosad et al. v. Svrcek et al. (Tex. Civ.App.) 84 S.W.(2d) 247; Benson v. Phipps, 87 Tex. 578, 29 S.W. 1061, 47 Am. St.Rep. 128; and Kirby v. American State Bank (Tex.Com.App.) 18 S.W.(2d) 599, 63 A.L.R. 1528.

None of these cases support the plea of limitation upon the facts of this case.

Benson v. Phipps simply holds there was an extension contract between the principal maker of a note and the payee based upon a sufficient consideration which operated to release the nonconsenting surety upon the note. The contrary holding is made in Kirby v. Bank. Novosad v. Svrcek has been overruled by the Supreme Court in opinion not yet reported.

In the present case Tom had the right to pay the note at any time before December 1, 1931, but Mrs. Hix could not require payment before that date. This extension was a consideration moving from Mrs. Hix to Tom for the renewal note, and is alone sufficient to support Mrs. Hix's claim of a lien holder for value. Steffian v. Milmo Nat. Bank, 69 Tex. 513, 6 S.W. 823. In addition, $200 was then loaned to Tom and included in the note.

On the other hand, the consideration to Mrs. Hix was the execution of a new note for past-due unsecured paper and a lien securing the same.

Appellant's first proposition reads: "A mortgage given by one partner to secure his individual indebtedness cannot be enforced as against the rights of the other partners, even though the creditor did not know at the time he took the mortgage that such property belonged to the partnership, unless such partners are estopped to set up their rights."

Appellant's theory under this proposition is summarized in his concluding argument, where he asserts the judgment should be reversed and rendered because it was "conclusively established:

"(1) That the lands in controversy belonged to the partnership of White & Tom;

"(2) That G. W. Tom, deceased, a former member of said partnership mortgaged an undivided half interest in said lands to

secure his individual preexisting indebtedness;

"(3) That the other members of said partnership did not authorize or ratify such mortgage;

"(4) That the partnership of White & Tom does not have sufficient assets wherewith to pay partnership obligations."

1. Appellant assumed the lands belonged to the partnership and the Whites did not ratify the action of Tom in giving the deed of trust to Mrs. Hix.

The title as disclosed by the muniments of title and deed records was in G. R. White and G. W. Tom in fee simple as tenants in common. 47 C.J., Partnership, § 190. There was nothing upon the face of the record to indicate any interest in the land owned by the partnership of White & Tom.

▓ If the partnership owns the land, its title is equitable, based upon a parol trust. One asserting such a title must prove the trust by evidence clear, satisfactory, and convincing.

42 Tex.Jur., Trusts, § 76.. To quote the Supreme Court: "Perhaps there is no fact which, in the trial of civil causes, is required to be so satisfactorily proved as that which engrafts a parol trust upon the legal title. * * * Whilst it is not necessary that it should be established beyond a reasonable doubt, nothing must be left to conjecture, nor must presumptions be indulged which are not the usual and almost necessary deductions from the facts proved." King v. Gilleland, 60 Tex. 271. Again it has been said that: "The principle involved is one of the first importance to the stability and certainty of titles, and it is a principle which it is the duty of the court to enforce by granting new trials, where it has been disregarded by juries." Markham v. Carothers, 47 Tex. 21.

The trust in this case is directly proved by the testimony of the defendant White, and he is corroborated by some circumstances. The evidence is ample to support a finding that the individuals did hold the title in trust, but we do not regard it as conclusively so showing under the rule announced above. White was vitally interested in the issue, and a suspicious angle of the evidence is the fact that the trustee Tom has had his lips sealed by death, and White did not repudiate to Mrs. Hix, Tom's authority to give the deed of trust until after Tom's death. In this connection see Johnson v. Deloney, 35 Tex. 42. The evidence also shows that by letter dated April 2, 1932, later quoted, Tom advised White he had given the deed of trust, and White did not repudiate such action to Mrs. Hix.

Again, it is fair to infer the partners J. E. and C. T. White knew the assets of the firm and should have been able to testify to the existence of the trust. They did not testify.

When Tom and others, on November 18, 1919, conveyed to G. R. White there remained vested in Tom the fee-simple title to a one-half interest which he theretofore owned. That estate in fee remained vested in Tom until he and White conveyed to Morrison on January 1, 1926, because Tom had not theretofore conveyed his said interest.

The asserted equitable title of the partnership evidently could not have been created until Story reconveyed to G. R. White and G. W. Tom on August 17, 1928. Story's deed recites the consideration as being the cancellation of the Morrison purchase-money notes in favor of G. R. White and G. W. Tom. It was not shown the partnership had acquired those notes, and it would therefore seem the consideration moved from the individuals rather than the partnership. It is fair, therefore, to infer Tom in 1928 reacquired his one-half interest in fee simple.

▓ Findings not having been filed by the trial court, it must be assumed by this court that all issues of fact presented by the evidence were found by the trial court in such manner as will support the judgment rendered.

▓ In view of the fact that White was a vitally interested witness, and considering the evidence as a whole, we sustain the implied finding of the trial court that the asserted trust and equitable title was not sufficiently proven.

▓ 2. It is thoroughly settled that one who claims a superior equitable title to land as against one who has purchased from the holder of the legal title must show that such purchaser did not purchase for value or purchased with notice of the outstanding equity. Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973; Commonwealth B. & L. Ass'n, v. Howard

(Tex.Civ.App.) 61 S.W.(2d) 546; Moore v. Humble Oil & Ref. Co. (Tex.Civ.App.) 85 S.W.(2d) 943, 944; Tarkenton v. Marshall (Tex.Civ.App.) 91 S.W.(2d) 473. The same rule applies in favor of lien holders. Texas Loan Agency v. Taylor, 88 Tex. 47, 29 S.W. 1057; McAlpine v. Burnett, 23 Tex. 649, 650.

■ There is no reason why such rule should not apply in a case where it is attempted to subordinate the rights of a purchaser from the individual holder of the legal title to the equitable title of a partnership.

In other jurisdictions such rule is applied. We quote:

From Martin v. Carlisle, 46 Okl. 268, 148 P. 833, 835, 6 A.L.R. 154:

"6. We are not unmindful of the fact that in cases like the one at hand, where the record title does not indicate a partnership holding, but appears to be a title held as tenants in common by the individual members, the record must be the guide on which parties dealing with one of the partners individually may with safety rely, and they ought not to be charged with notice of equities existing between the partners, which do not show of record, or which has not been brought to the knowledge of the purchaser of such partnership interest, and the purchaser from a partner of his undivided interest in real estate held by partners in their individual names cannot lightly be divested thereof, and titles thus obtained should be held good, until it is shown by evidence that is clear and convincing that it was not acquired in good faith, but that the purchaser had notice that it was partnership property. Reynolds v. Ruckman, 35 Mich. 80; Ware v. Owens, 42 Ala. 212, 94 Am.Dec. 672; McDermot v. Laurence, 7 Serg. & R. (Pa.) 438, 10 Am.Dec. 468; Buchan v. Sumner, 2 Barb. Ch.(N.Y.) 165, 47 Am.Dec. 305; Taber-Prang Art. Co. v. Durant, 189 Mass. 173, 75 N.E. 221; Robinson Bank v. Miller, 153 Ill. 244, 38 N.E. 1078, 27 L.R.A. 449, 46 Am.St.Rep. 883.

"7. The burden of proof is upon the party attacking such a deed to prove the same by satisfactory evidence, for there is a strong presumption of law that when land is deeded to the several members of a partnership individually, without any showing in the deed that the property is held for the firm, the ownership is in the individual members of said firm, and the fact that the property was used as the place for conducting the business of the partnership does not of itself disclose an intent to make it partnership property, and is not sufficient proof that it was partnership property, when the evidence shows, as in this case, that it was the only place said partners had for carrying on their business. The proof must not only show that it was purchased with partnership funds and used for the partnership purposes, constituting a part of the partnership assets, but there must be further proof that the purchaser knew these facts or had knowledge of such facts that would put a reasonably prudent man upon inquiry which, followed up, would give him the information that the property was of the assets of the firm."

From Adams v. Blumenshine, 27 N.M. 643, 204 P. 66, 67, 20 A.L.R. 369: "The presumption is always against the inclusion in the firm assets of real estate held by the partners as tenants in common, and the presumption is that the ownership is where the muniments of title place it."

From National Union Bank v. National Mechanics' Bank, 80 Md. 371, 30 A. 913, 915, 27 L.R.A. 476, 45 Am.St.Rep. 350: "The same reasoning applies to real estate held of record by members of a firm as tenants in common. When it is sought to change such property from individual to partnership property, the record evidence all pointing to it being the former, a court of equity should not act upon doubtful proof, particularly when the rights of strangers or third parties are to be affected. The public records will be of but little avail, if the private books and intentions of partners are to entirely control and determine the character of ownership of real estate." See, also, Lee v. Wysong (C.C.A.) 128 F. 833.

■ There is no question as to the status of Mrs. Hix as a lienholder for value, and the evidence is ample to support the implied finding of the trial court that she acquired her lien in good faith, without notice, actual or constructive, of the asserted equitable title of the partnership.

3. On April 2, 1932, Tom wrote G. R. White the letter mentioned above. It reads: "In talking of deeding this land yesterday to Charlie and Johnie, I forgot to tell you that I had given Mrs. S. D. Hix of Midland a deed of trust on an undivided half

interest to sections 4 and 10 470 acres of $6700.00 We talked about this in Ft. Worth once and you suggested that I do this. I also gave the First Natl. Bank of Midland a deed of trust to an undivided half interest on four sections of the Mulkey land to secure a note of $13500.00. I am sorry I had to do this but I did not think things would get in the conditions they have. I will do everything I can to help pay these debts, and would deeded this land at any time you would have asked me too."

█ White admitted he received the letter and never said anything to Mrs. Hix. The letter says White had suggested the action taken. If White did not assent to such action, he should have promptly notified Mrs. Hix or son. By his silence he will be deemed to have assented.

█ 4. The evidence is also sufficient to show the partnership was solvent when the deed of trust was given.

If it be conceded the equitable title was vested in the partnership and Mrs. Hix is not a lienholder in good faith, nevertheless, in view of White's assent and the solvency of the partnership on June 15, 1931, Mrs. Hix's lien is valid and superior to any right of White in his individual capacity and as trustee for the creditors of the partnership. Our view of the principles of law upon the issues of assent and solvency is stated in Tom et al. v. First National Bank of Midland, supra. We refer to our opinion in that case.

For the reasons stated, the judgment should be affirmed.

The numerous authorities cited and quoted at length in appellant's brief announce well-settled rules of partnership law, but they have no application to the facts of this case.

The only authority which seems to be at all relevant is Sherk v. First Nat. Bank, 206 S.W. 507, opinion by the Commission of Appeals.

It would seem from the opinion in that case the land was assumed to belong to the partnership and so regarded by the parties. The partnership also seems to have been insolvent. There are other distinguishing features in the facts. Furthermore, the opinion was not approved by the Supreme Court.

Affirmed.