# HOME BEN. ASS'N v. GAYLE.
## No. 2242.

Court of Civil Appeals of Texas.   Waco.
Jan. 23, 1941.

John F. Sheehy, of Waco, and Cecil R. Glass, of Marlin, for appellant.

Conway & Scharff, of Waco, for appellee.

TIREY, Justice.

This suit was brought by Mrs. Elsie Gayle against Home Benefit Association (a local mutual aid association) for the collection of a balance of $3,300, due on three policies of insurance upon the life of her husband. The case was tried before the court without a jury and she recovered judgment for the sum of $3,267, with six per cent interest thereon from September 3, 1935, the date of the death of her husband. The association has appealed. The parties will be designated as in the trial court.

In view of the questions involved, it will be necessary to make a comprehensive statement. The policies in question totalled $5,000, and, after the death of insured, the defendant admitted liability thereon and made partial payments at various times, and up to the 25th day of November, 1936, had paid $1,610 thereon. On that day plaintiff and defendant entered into the following written agreement:

"That, Whereas, the Home Benefit Association of Falls, McLennan and adjoining counties, is indebted to me, the undersigned, in an amount not to exceed the sum of $3300.00, to be paid to me out of the Mortuary fund of said Association; and

"Whereas, there are numerous other claims unpaid and outstanding against said Mortuary fund, and said Association is unable to pay current claims in full until all prior claims are paid; and

"Whereas, it would be to the mutual advantage of the undersigned and the Home Benefit Association for said Association to pay its current claims promptly in order to maintain its membership;

"Therefore, for and in consideration of the premises, it is agreed by and between said Association and the undersigned, that said Association shall have the right to first pay the claims maturing against the Mortuary fund from and after the 1st day of January, 1937, and that the claims maturing and unpaid before said date shall be paid on a pro rata basis out of the surplus of said fund and that said proration shall be made quarterly or oftener. It is further agreed, however, that out of the surplus in said fund after the payment of current claims, said Association may compromise and settle for less than full value, claims outstanding against the same with claimants desiring to do so."

Defendant sought to avoid liability on the unpaid balance of the policies on the ground that they were superseded by the terms of the above contract and that it had complied with said contract and that same had not been repudiated nor rescinded by it and that it was in full force and effect. Defendant further pleaded the two-year statute of limitation as a defense and further that plaintiff's suit was barred by virtue of the provisions of the policies and the Constitution and by-laws of said Association, "which provide that no cause of action based upon said certificate of membership shall be brought more than two years and one day after the accrual of said cause of action." The plaintiff, in supplemental petition, admitted the execution of the agreement in question but pleaded that it was not a bar to her recovery upon the policies for three reasons: (1) that it was a composition agreement and that the defendant had breached such agreement by paying its policy holders whose claims matured before January 1, 1937, indiscriminately a sum in excess of $24,000, and claimed that some of the policies were paid in full, and that some were paid in excess of 50% of the amount of the debt; (2) that it was secured through fraud; and (3) that said agreement was without consideration.

At the request of the defendant, the court filed findings of fact and conclusions of law. The court, in his findings of fact, found on each material allegation of fact supporting plaintiff's theory of the case and concluded as a matter of law substantially (1) that said contract was an executory composition agreement and that it was breached by the defendant, and that said breach revived the original claim of the plaintiff upon the policies in suit; (2) that plaintiff was induced by fraud of the defendant to sign the same, and that such fraud avoided the agreement and revived her claim on the policies and that such fraud was not discovered by the plaintiff

until after December 25, 1938, a short time before suit was filed; (3) that said agreement was without any consideration and was void; (4) that the plaintiff's claim was not barred by the statute of limitation and that defendant had waived and is estopped to plead the statute of limitation.

Error is assigned substantially on three grounds: (1) that the court erred in finding that the contract of November 25th was not based upon a sufficient consideration; (2) that the evidence is wholly insufficient to sustain the finding that plaintiff was induced to sign the contract by fraudulent statements of defendant; (3) that the evidence is wholly insufficient to show a breach of the contract of November 25th, because the evidence shows that all of the payments made in January and February of 1937 were made before said contract became effective.

Each of the foregoing assignments is overruled. The facts are not in dispute. The association (in November 1936) represented to Mrs. Gayle prior to and at the time she executed the contract of November 25th that it owed claims of about $200,-000, and that said indebtedness was distributed among approximately 200 policy creditors, and that it was bankrupt; that it would be impossible for it to continue its business unless the policy creditors would make an agreement with defendant, whereby it could pay first its claims maturing after January 1, 1937, and that all claimants whose claims matured prior to January 1, 1937, would subordinate their claims so that they could be paid on a pro rata basis out of the surplus of the mortuary fund accumulated and remaining after the claims maturing after January 1, 1937, had been paid; that it would be necessary for such an agreement to be signed by all of the policy creditors in order that the association would be able to go out and get new business, and unless it was done the association would fail; that she would be paid her pro rata part on the foregoing basis in the event she signed the agreement; that "they had met with no opposition, that it had been very agreeable with the old policyholders;" that they were making progress and believed they would get all the policy creditors to sign up and that if they did not sign up, her contract would not be valid. Mrs. Gayle received a check in partial payment for the sum of $90, dated November 16, 1936, which she cashed on November 30, 1936. During the months of January and February, 1937, the associa-

tion paid (indiscriminately and not on a pro rata basis) on claims that matured prior to January 1, 1937, the sum of $24,969.-50. This sum exceeded the mortuary receipts of said months to the amount of $8,629.71. (Mrs. Gayle received no payment during this period.) It was agreed that at the time the foregoing payments were made "the defendant executed with the beneficiary a deferred payment agreement, whereby it agreed to pay the balances on the said policies under terms similar to the ones which they made with Mrs. Gayle, except that where * * * payments made the policyholders at various times during January and February of 1937, this agreement does not apply." For example, one claim matured on July 22, 1936 in the amount of $2,125. Partial payments were made thereon as follows: February 3, 1937, $125; February 20, 1937, $375; February 23, 1937, $350. Three small claims were paid in full and some of the other payments were in excess of 25% of the claim. The association paid such amounts on each respective claim as was sufficient to obtain the claimant's signature to said agreements. Some agreements were obtained by the payment of very small amounts and in others the entire claim was subordinated without any cash payment. The work of signing up the policy creditors was completed about March 1, 1937. The association paid its first dividend on a pro rata basis (on claims maturing prior to January 1, 1937) on March 31, 1938, and another on July 30, 1938. Mrs. Gayle received and accepted $16.50 on each payment.

In view of the foregoing record, was the association legally bound to Mrs. Gayle to pay first its claims maturing after January 1, 1937, and permit its mortuary fund to accumulate and withhold and forego payments after January 1, 1937, on all claims that matured prior to that date, until it could be determined whether or not said contract could be consummated? We think good faith so required. Willis v. City National Bank, Tex.Civ.App., 280 S.W. 270, point p. 274; Lockney Farmers' Co-op. Ass'n v. Egan, Tex.Civ.App., 275 S.W. 732; Gustafson v. American Land Co., Tex.Civ.App., 234 S.W. 244. The contract of November 25th was an executory composition agreement. Block & Co. v. Largent, Tex.Civ.App., 135 S.W. 1078; 12 C.J. 251; 15 C.J.S., Compositions With Creditors, § 1. Composition agreements must be strictly construed. 15 C.J.S., Compositions With

Creditors, § 9, p. 679. It has long been the rule in Texas that those who enter into composition agreements shall exercise the utmost good faith towards each other, and, in the absence of an express stipulation to the contrary, there is an implied agreement that the creditors who enter into it shall share alike, and that no one shall receive more than the others without the assent of the others. A preference cannot be given "without the knowledge or consent of the other creditors, and when that exists, whatever may be its form, it renders the agreement for preference illegal and void." Oklahoma Tool & Supply Co. v. Daniels, Tex.Civ.App., 296 S.W. 631, 635; 12 C.J. 287; 15 C.J.S., Compositions With Creditors, § 14, p 691; Willis & Bros. v. Morris, 63 Tex. 458, 51 Am. Rep. 655. The contract of November 25th gave the association the right "to first pay the claims maturing against the mortuary fund from and after the 1st day of January, 1937." It further provided "that the claims maturing and unpaid before said date shall be paid on a pro rata basis out of the surplus of said fund and that said proration shall be made quarterly or oftener." The association was bound to the exercise of good faith in preserving the equality of the payments pro rata on those claims which matured prior to January 1, 1937, by the express terms of the agreement, and the association could not pay indiscriminately nor in full those claims maturing prior to January 1, 1937, because those who were so paid secured a greater advantage than their associates obtained under the composition agreement. See Willis & Bros. v. Morris, supra; 9 Tex.Jur. 322. Our courts have uniformly held that "an undertaking between a debtor and one of his creditors, in effecting a composition of his debts, by which he agrees to a secret preference of such creditor, renders the whole composition invalid * * *." See Gourley v. Tyler, 4 Willson Civ.Cas.Ct. App. § 215, 15 S.W. 731, point page 733. It appears from the record that the association made the payments in January and February of 1937 under the belief that it had the legal right so to do, but we think that such payments made indiscriminately by the association on claims that matured prior to January 1, 1937, without the knowledge and consent of Mrs. Gayle, constituted a preference and were fraudulent in law. Abernathy Rigby Co. v. McDougle, Cameron & Webster Co., Tex.Civ.App., 187 S.W. 503, point page 504; Batchelder &

Lincoln Co. v. Whitmore, 1 Cir., 122 F. 355, 361. Surely the foregoing payments placed the association in such position that it could not keep and perform the agreement of November 25th with plaintiff. Did not this change in position operate as a fraud against plaintiff? See Texarkana Nat'l. Bank v. Hubbard, Tex.Civ.App., 114 S.W. 2d 389. Moreover, the association, having failed to comply with the terms of the agreement of November 25th, could not set up the agreement as a defense. In re Nachman Co., 2 Cir., 6 F.2d 427, point page 430. The association having breached the contract of November 25th, such breach revived the original claim of Mrs. Gayle upon the policies, and she had the right to sue for the whole of the original debt, less the amount previously paid to her. In re Nachman Co., 2 Cir., 6 F.2d 427; 15 C.J.S., Compositions With Creditors § 13, p. 690; Ashbrook v. Neal, Tex. Civ.App., 103 S.W.2d 1101; Hudspeth v. Hilburn, Tex.Civ.App., 283 S.W. 314; Ferguson-McKinney Dry Goods Co. v. Garrett, Tex.Com.App., 252 S.W. 738; 12 C.J. 270, § 40, p. 285, § 79, 15 C.J.S., Compositions With Creditors, §§ 10, 13.

■■ The appellant contends that the plaintiff's cause of action under her policies is barred by the statute of limitation. We overrule this contention. In fraud actions "the rule is that limitation begins to run from the time of the discovery of the fraud, or from the time it might have been discovered by the use of reasonable diligence." Glenn v. Steele, Tex.Sup., 61 S.W.2d 810; American Indemnity Co. v. Ernst & Ernst, Tex.Civ.App., 106 S.W.2d 763. We think the evidence is ample to sustain the finding of the trial court that fraud was not discovered by the plaintiff until after December 25, 1938, and a short time before the institution of this suit.

■ The association having breached its contract of November 25th, such breach revived the plaintiff's claim on her policies, and she was entitled to recover legal interest on the unpaid balance of her claim from the date the same matured. Hudspeth v. Hilburn, Tex.Civ.App., 283 S.W. 314; Ferguson-McKinney Dry Goods Company v. Garrett, Tex.Com.App., 252 S.W. 738; Kirby v. American State Bank, Tex. Com.App., 18 S.W.2d 599, 63 A.L.R. 1528.

We have considered all other assignments and they are overruled.

The judgment of the trial court is affirmed.